999 F.2d 547
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Charlie JACKSON, an individual; Leon Septh, an individual;
Napoleon Irvin, an individual; Percy Bradfield,
an individual, Plaintiffs-Appellants,
v.
Wayne MONTGOMERY, an individual and in his capacity as golf
course manager for the Johnson County Parks and
Recreation District, Defendant-Appellee.
 No. 92-3245.
 United States Court of Appeals, Tenth Circuit.
 July 1, 1993.
 
 Before BALDOCK and KELLY, Circuit Judges, and BENSON,* District Judge.
 ORDER AND JUDGMENT**
 PAUL KELLY, Jr., Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs appeal from the district court's grant of defendant's motion for summary judgment and dismissal of their civil rights action. Plaintiffs claim that Montgomery discriminated against them based on race when they attempted to rent golf carts at the golf course that Montgomery managed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 The parties agree on the general facts. Plaintiffs, who are black, met at Tomahawk Hills Golf Course sometime after 3 p.m. to play golf. The course is owned and operated by the Johnson County Park and Recreation District. Plaintiffs rented two golf carts for nine holes of golf. Course policy prohibited the rental of carts for eighteen holes after 3 p.m.
 
 
 4
 After completing the first nine holes, plaintiffs Jackson and Septh went to the clubhouse to rent the carts for use on the back nine. Their request was denied on the basis of the general course policy against renting carts for eighteen holes after 3 p.m. Plaintiffs began to play the back nine on foot. Observing a foursome of white golfers using carts on the tenth hole, plaintiffs Jackson and Septh returned to the clubhouse to determine why the white golfers, but not plaintiffs, were allowed to use carts after 3 p.m.
 
 
 5
 Upon inquiry as to whether the course had separate policies concerning cart rental for blacks and whites, they were referred to Montgomery, the manager of the course. Montgomery denied there were separate policies for blacks and whites, and explained that he--but no other course employee--could authorize cart rental for the back nine after 3 p.m. The white golfers had rented the carts under the exception, and he offered plaintiffs carts for $1 per person per hole, allegedly the same terms the carts were rented to the white golfers. This offer was rejected.
 
 
 6
 Returning to the course, plaintiffs met another white golfer, Paul Titus, using a cart on the back nine, who stated that he had rented the cart after 3 p.m. Although he thought he had rented the cart for eighteen rather than nine holes, his rental receipt indicated he rented the cart for only nine holes; apparently no one had asked him to pay a fee for the back nine.
 
 
 7
 An affidavit was filed stating that Montgomery had the authority to make exceptions to the policy against renting carts for more than nine holes after 3 p.m. depending on the availability of daylight, staffing, and other factors. The affidavit also stated that the rental rate was $1 per hole for each cart.
 
 
 8
 Plaintiffs claim that Montgomery's refusal to rent carts to them at the rate of $1 per hole instead of $1 per hole per person denied them, on account of their race, the right to make contracts under the same terms and conditions as white golfers, contrary to 42 U.S.C. § 1981 and 42 U.S.C. § 2000a, and also denied them equal protection under color of state law in violation of 42 U.S.C. § 1983. They contend that they made a prima facie case of discrimination and that genuine factual disputes remain. They allege that the district court made credibility determinations and drew inferences in favor of the movant, contrary to the standard in ruling on a summary judgment motion. Plaintiffs argue the disputed facts are whether they were in fact offered carts on the same terms and conditions as white players, whether a white player's use of a cart on the back nine without paying was because course employees did not detect his use or because of his color, and whether Montgomery's failure to maintain records showing how he administered the exception to the policy and his inability to recall exercising his discretion in favor of any black players implies that Montgomery discriminates against blacks.
 
 
 9
 We review summary judgment orders de novo, using the same standards applied by the district court. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). The substantive law governing the claims determines what facts are material. Liberty Lobby, 477 U.S. at 248.
 
 
 10
 The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir.1991). If this burden is met, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Applied Genetics Int'l v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990).
 
 
 11
 To assert a valid claim under § 1981 and the equal protection clause, plaintiffs must prove that they were subjected to intentional discrimination. General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 390-91 (1982). As the district court recognized, the McDonnell Douglas scheme of proof is appropriate in determining whether there was intentional discrimination that prevented plaintiffs from contracting under the same terms as white golfers. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973); see also Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989) (McDonnell Douglas applied to § 1981 claim); Brown v. American Honda Motor Co., 939 F.2d 946, 949 (11th Cir.1991) (McDonnell Douglas applied to alleged discrimination in contracting), cert. denied, 112 S.Ct. 935 (1992); Chauhan v. M. Alfieri Co., 897 F.2d 123, 126-27 (3d Cir.1990) (same); cf. Asbury v. Brougham, 866 F.2d 1276, 1279 (10th Cir.1989) (McDonnell Douglas applied to § 1982 claim for alleged discrimination in housing). Under this analysis, plaintiffs must first make a prima facie case of discrimination. The burden then shifts to defendant to produce evidence demonstrating legitimate, nondiscriminatory reasons for its conduct. The burden then shifts back to plaintiffs to show that the proffered reasons are merely pretextual and that the conduct complained about was based on race. See generally Shapolia v. Los Alamos Nat'l Lab., 992 F.2d 1033, 1036-37 (10th Cir.1993); Asbury, 866 F.2d at 1279; Brown, 939 F.2d at 949-50. The McDonnell Douglas analysis provides the governing law for determining what facts are material for summary judgment purposes. See Jackson v. University of Pittsburgh, 826 F.2d 230, 232 (3d Cir.1987), cert. denied, 484 U.S. 1020 (1988).
 
 
 12
 Plaintiffs here assert that they made a prima facie case and imply that the district court acknowledged as much. Appellant's Br. at 8 and n. 2. We do not read the district court's oral order so expansively. The district court concluded that plaintiffs did not prove discriminatory intent under McDonnell Douglas, which is shown by making the prima facie case, and then further analyzed plaintiffs claims under the assumption that they stated a prima facie case. Appellants' App., tab B at 13-14.
 
 
 13
 Not only do plaintiffs overstate the district court's oral remarks, but they also fail to identify the required elements of a prima facie case or explain how their evidence satisfies these requirements. Plaintiffs neglected to include the summary judgment briefs in the appendix. See 10th Cir.R. 30.1.1, which incorporates R. 10.3. "[I]t is counsel's responsibility to see that the record on appeal is sufficient for consideration and determination of the issues on appeal." 10th Cir.R. 10.3. We will not make a party's arguments for it and may dismiss a claim not properly argued. See Phillips v. Calhoun, 956 F.2d 949, 953-54 (10th Cir.1992). In his supplementary appendix, Montgomery provided a copy of his summary judgment brief and that portion of plaintiffs' response brief that dealt with factual issues. Despite plaintiffs' failures, we conclude that the material presented is sufficient, albeit barely, for us to address the merits of plaintiffs' arguments.
 
 
 14
 The proof required to make the prima facie case required by McDonnell Douglas varies depending on the claims and facts asserted. See Shapolia, 992 F.2d at 1037. To make a prima facie case of discrimination in failing to contract on the same terms, plaintiffs must show: (1) that they are members of a protected class; (2) that they attempted to contract for certain services; (3) that whites were allowed to contract for these services on certain terms; and (4) that plaintiffs were denied the right to contract for the same services on those same terms. See, e.g., Asbury, 866 F.2d at 1279-80 (discussing elements of prima facie case for claim of housing discrimination); Brown, 939 F.2d at 949 (discrimination in contracting); Chauhan, 897 F.2d at 127 (discrimination in leasing).
 
 
 15
 Viewing the evidence in the light most favorable to plaintiffs, we agree that they failed to make a prima facie showing of discrimination. They did show they were members of a protected class, and that they attempted to contract for the use of carts. They showed that course policy allowed for rental of the carts at Montgomery's discretion for $1 per hole, but that they, instead, were offered the rate of $1 per person per hole, or twice as much, assuming two people per cart. Plaintiffs, however, failed to present any evidence that whites were allowed to contract for these services on terms denied to plaintiffs.
 
 
 16
 Montgomery's evidence was uncontroverted and reflected that the white golfers were actually charged $1 per person per hole and that plaintiffs were offered the same terms. He also produced uncontroverted evidence that Paul Titus was not allowed to use the cart on the back nine for free, but instead used the cart without permission of course employees and was not treated any differently from plaintiffs because of his race. Montgomery thus established that his conduct was nondiscriminatory.
 
 
 17
 Plaintiffs offered no additional evidence. Although plaintiffs admit that they must produce some evidence of disparate treatment, Appellant's Br. at 11, they concede that they "could not offer any proof of disparate treatment." Id.
 
 
 18
 Plaintiffs essentially argue that Montgomery's inability to prove that he does not discriminate--other than through his evidence that plaintiffs were offered the same terms as the white golfers--constitutes evidence that he does discriminate. In other words, plaintiffs contend that it should be Montgomery's burden to prove a negative--that he does not discriminate--rather than their burden to prove that he does discriminate. They cite no authority for this novel interpretation of parties' respective roles in proving their cases, and we cannot accept such an interpretation. See EEOC v. Flasher Co., 986 F.2d 1312, 1318 (10th Cir.1992) (rejecting similar argument).
 
 
 19
 Plaintiffs also argue that the district court made improper credibility determinations, and should not have believed Montgomery's evidence that the white golfers and plaintiffs were offered the same terms. Since there was no evidence to refute Montgomery's testimony, there were no credibility determinations made. To defeat a summary judgment motion, plaintiffs cannot rely solely on the possibility that the factfinder might not believe the evidence. "Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Liberty Lobby, 477 U.S. at 257; see also Chauhan, 897 F.2d at 127-28. Plaintiffs contend that Montgomery did not explain why he violated the course policy that set the rental rate at $1 per hole and that this creates a factual question regarding whether Montgomery offered the same terms to both blacks and whites. The evidence of the $1 per hole differential was the focus of plaintiffs' prima facie case, however, and to survive a motion for summary judgment, they must produce or point to some evidence to support their contentions. They failed to do so, and summary judgment was properly granted.
 
 
 20
 In light of our conclusions above, plaintiffs other claims of error concerning relief under § 2000a and the liability of Montgomery's employer are moot. The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 
 
 
 *
 Honorable Dee V. Benson, District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3