Larry D. HYSTEN, Plaintiff,

v.

The **BURLINGTON NORTHERN AND SANTA FE RAILROAD COMPANY, Defendant.**

No. 98–4027–SAC.

United States District Court, D. Kansas.

March 7, 2001.

1240

Alan V. Johnson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for Plaintiff.

James S. Pigg, David R. Cooper, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This is a case brought pursuant to 42 U.S.C. § 1981, in which Larry D. Hysten, the plaintiff, alleges that the Burlington Northern and Santa Fe Railroad Co., the defendant, discriminated against him on the basis of his race by suspending him from work and disciplining him. Plaintiff also claims that defendant unlawfully retaliated against him due to his race, after the filing of this lawsuit. (Dk. 48, Pretrial Order, p. 1).[1] The case comes before the court on defendant's motion for summary judgment.

## UNCONTROVERTED FACTS

The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. Immaterial facts, and those not necessary to the court's decision are not set forth herein.

On February 13, 1996, near the beginning of his shift, plaintiff attended a required safety meeting. Before the meeting started, plaintiff noticed a letter regarding his absenteeism on the clipboard of his supervisor, Dennis Harvey. Plaintiff had received two other such special handling letters for absenteeism in recent months. Defendant asserts that plaintiff, upon seeing the absenteeism letter, "went ballistic." (Dk. 43, Harvey depo., p. 30–31). Plaintiff admits that he became angry, depressed or discouraged, uttered a profanity, then left the meeting without receiving or requesting permission to do so, and with-

---

1. Although defendant's brief refers on occasion to a potential hostile work environment claim, no such claim is included in the subsequently filed pretrial order.

out telling anyone his purpose for leaving. Plaintiff remained absent from the safety meeting for ten to twenty minutes.

After the safety meeting ended, plaintiff reported to his work station. Plaintiff's supervisor thought plaintiff was noticeably agitated or "high strung" throughout his shift that day. Sometime during his shift plaintiff asked Harvey if he could take a vacation day the following day, which Harvey approved. At or after the end of plaintiff's shift, Harvey and plaintiff spoke about plaintiff's plans for his vacation day, and plaintiff stated that he was going to buy a gun. Plaintiff admits having made the statement, but alleges that he was just joking. Harvey did not know whether or not plaintiff was serious, and reported plaintiff's conduct the following day. A formal investigation ensued, after which plaintiff was found to have violated Rule 1.15, (duty reporting) for leaving the meeting without permission, and Rule 1.6 (conduct) for being insubordinate, quarrelsome, and discourteous. Plaintiff received a 45 day suspension, 5 days of which were deferred. After an unsuccessful internal appeal of this suspension, plaintiff filed this suit on February 12, 1998.

On May 6, 1998, plaintiff reported to work without wearing safety glasses with sideshields, in violation of a written safety rule. General Equipment Supervisor Allison spoke to the plaintiff that day about his violation, then issued a Level 1 written reprimand to plaintiff the following day for that safety violation. Plaintiff made no internal complaint regarding this reprimand.

On July 8, 1998, acting supervisor Wessel assigned plaintiff to a "catch up" task, which plaintiff found undesirable. Defendant states that plaintiff was assigned to

the task because he was the least senior employee in his work craft or of the employees present on the day in question. Plaintiff disputes this by his declaration that the custom and practice at the shop was to assign "catch-up tasks" to the "pool" man on a crew, regardless of seniority. (Dk. 50, plaintiff's declaration, p. 2). Soon after plaintiff began performing the catch up task, he requested assistance from another black man. Plaintiff alleges and defendant disputes that Wessel then said he "had two black men doing it but he had to tell us how to do it" and that Wessel had never "seen a black man that wasn't a dummy." (Dk. 43, Hysten depo. p. 192–193.)

Plaintiff filed a written complaint with the defendant soon thereafter, and a formal investigation followed. During that investigation, none of the witnesses corroborated plaintiff's assertion that Wessel had used racial language, and Wessel was not reprimanded. Other facts relevant to the court's analysis are set forth below as necessary.[2]

## SUMMARY JUDGMENT STANDARD

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude sum-

---

**2.** The court notes another case by this plaintiff against this defendant, arising out of the subsequent termination of plaintiff's employ-

ment. *Hysten v. Burlington Northern & Santa Fe R. Co.,* 2000 WL 1871889 (D.Kan. Dec. 6, 2000).

mary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.,* 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (*quoting Bacchus Industries, Inc. v. Arvin Industries, Inc.,* 939 F.2d 887, 891 (10th Cir.1991)). A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.,* 45 F.3d 357, 363 (10th Cir. 1995).

## ANALYSIS

### Race Discrimination

Plaintiff's claim of race discrimination is based solely upon his discipline in 1996. (Pretrial Order, Dk. 48, p. 4). The parties have demonstrated their familiarity with the principles of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and the application of those principles in this § 1981 case. *See Thomas v. Denny's Inc.,* 111 F.3d 1506, 1509–10 (10th Cir.1997).

■ To establish a prima facie case of disparate treatment in cases such as this, plaintiff must show that 1) he belongs to a protected class, 2) he suffered an adverse employment action, and 3) defendant treated similarly situated employees differently. *See Trujillo v. University of Colorado Health Sciences Center,* 157 F.3d 1211, 1215 (10th Cir.1998). Defendant agrees that the first two of these elements are met, in that Hysten is black and was given a 45 day suspension, but alleges that plaintiff fails to meet the third element.

The Tenth Circuit has given recent guidance concerning disparate treatment claims in stating:

To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness. *Elmore v. Capstan, Inc.,* 58 F.3d 525, 529–30 (10th Cir.1995). "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Wilson v. Utica Park Clinic, Inc.,* No. 95–5060, 76 F.3d 394, 1996 WL 50462 (10th Cir.1996) (unpublished) (*citing Mazzella v. RCA Global Communications, Inc.,* 642 F.Supp. 1531, 1547 (S.D.N.Y.1986), *aff'd,* 814 F.2d 653 (2d Cir.1987)). A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated. *See David*

*v. City and County of Denver*, 101 F.3d 1344, 1359–60 (10th Cir.1996) (discussing circumstances to be compared); *Flasher*, 986 F.2d at 1320 (same); *see also Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 986 (10th Cir.1996) (rejecting plaintiff's evidence of differential treatment because the other employees were not similarly situated), *cert. denied sub nom. Doan v. Seagate Technology, Inc.*, 519 U.S. 1056, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997).

*Aramburu v. The Boeing Company*, 112 F.3d 1398, 1404 (10th Cir.1997).

■ Plaintiff claims that R.T. Pytel, a white employee, was involved in similar conduct at work, but was subjected to only informal investigation, as opposed to the formal investigation plaintiff underwent, and was disciplined by only a Level 1 reprimand instead of the Level 5 suspension plaintiff received. Plaintiff focuses on the allegations made against Pytel, rather than on the results confirmed by defendant's investigation. Plaintiff does not attempt to show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness, but that he was treated differently than others who were *alleged* to have violated work rules of comparable seriousness. This is insufficient.

It is undisputed that as a result of defendant's investigation, Pytel was not found to have violated work rules of comparable seriousness to those plaintiff was found to have violated. Although another employee accused Pytel of threatening to "take his gun and blow him away or his head off," (Dk. 43, Attachment 11, p. 2), investigation of that charge revealed that Pytel made no reference to a gun, and did not otherwise threaten the individual. Pytel did use vulgar language, however, and was issued a Level 1 reprimand for being discourteous.

Defendant has additionally shown the court that Pytel and plaintiff were not similarly situated in their work histories. See Dk. 44 (Pytel's employee record showing 10 demerits); Dk 43, Exh. 19 (Plaintiff's employee record showing 120 demerits); Dk 43, Johnson depo. p. 149–154 (Johnson's uncontradicted testimony that he considered plaintiff's disciplinary record in deciding to issue him a Level 5 suspension.)

■ Where the circumstances surrounding the discipline of two employees are materially different, or their disciplinary histories are substantially different, no inference of discrimination is raised by an employer's different treatment of the two. *See Aramburu*, 112 F.3d at 1405 (finding that the circumstances of others' receipt of vacation approval was dissimilar to plaintiff's); *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir.1996) (rejecting plaintiff's evidence that she was required to dress more formally than her male counterparts because she failed to show they were similarly situated in terms of job functions); *Wilson v. Utica Park Clinic, Inc.*, 1996 WL 50462 at *2 (10th Cir.1996)(rejecting differential treatment evidence of a plaintiff discharged for repeated absences where the plaintiff failed to show that her fellow employees had comparable attendance records). Plaintiff concedes that the defendant has met its burden of showing a legitimate non-discriminatory reason for its actions. (Dk.49, p. 18).

Plaintiff alleges that defendant's asserted reasons for distinguishing between Pytel and plaintiff and their respective disciplines are pretextual because: 1) the charges against Pytel were resolved through informal, largely undocumented proceedings, yet the charges against the plaintiff went to formal investigation based upon Johnson's subjective feeling about

the credibility of witnesses, raising an inference of discrimination; 2) Johnson's recollection of the investigation against Pytel is vague and internally contradictory, and could thus reasonably be disbelieved; 3) plaintiff's version of the events on Feb. 13, 1996 differs from Harvey's version, requiring a jury determination of motive; and 4) the uncommon length of plaintiff's suspension warrants an inference that Johnson was trying to make an example out of the plaintiff because of his race.

Here, it is undisputed that the defendant made its decisions about Pytel and the plaintiff based on its belief, after investigations, that the acts plaintiff committed were significantly more serious than those Pytel committed. Plaintiff states that if a jury is allowed to redetermine the facts surrounding the Pytel incident, it could find, contrary to the defendant, that Pytel's incident and plaintiff's are substantially similar.

In challenging the manner in which defendant's decisions were made regarding the levels of discipline for plaintiff and Pytel, and the decisions themselves, plaintiff fails to raise a triable issue as to pretext. As the Tenth Circuit has recently held:

> We also agree that plaintiff has not raised a triable issue as to pretext. Plaintiff's arguments focus on the veracity of the employees' complaints and the handling of the investigation. However, that is not the relevant inquiry. The relevant inquiry is whether Boeing reasonably believed the harassment and/or discrimination allegations and acted on them in good faith. *See Kendrick v. Penske Transp.*, 220 F.3d 1220, 1230–32 (10th Cir.2000) (holding evidence that plaintiff did not actually commit misconduct was insufficient to show pretext when it was undisputed that the employer made its decision based on its belief, after an investigation, that plaintiff did,

in fact, commit the alleged acts); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998) (holding that plaintiff failed to establish pretext for his discharge when the employer believed coworker's allegations of sexual misconduct after conducting an investigation, despite plaintiff's evidence that the allegations may have been false).

*Cash v. The Boeing Company*, 2000 WL 1717185, *2 (10th Cir.2000) (Table). The same is true here. Plaintiff's assertions regarding the Pytel investigation are insufficient to establish pretext.

Plaintiff complains of the length of his suspension, yet fails to show the court that any other employee with a comparable violation and disciplinary history received any shorter suspension. Absent such evidence, any inference that the plaintiff received such a lengthy suspension due to his race would be unfounded.

Lastly, plaintiff attempts to show that Harvey was racially biased or acted with racial motivation by "evidence that a former black female employee of the defendant heard Dennis Harvey make racially motivated comments to her, and that Mr. Harvey reacted to her conduct in a racially discriminatory manner." (Dk.55, p. 1). The affidavit offered in support of that assertion, dated in 1993, falls far short of so doing, and instead merely accuses Mr. Harvey of standing directly in front of the employee and "speaking very loudly in to [her] face" in a work area in which she admits "a normal tone of voice could not be heard." (Dk.55, Exh. 1). But even if the affidavit supported the allegation by plaintiff's counsel, evidence of one event prior to 1993 between Harvey and another employee of plaintiff's race falls far short of establishing any pattern or practice, and has no probative value in showing Harvey's racial motivation or bias toward this plaintiff in 1996.

No triable issue of pretext has thus been raised as to plaintiff's claims of race-based discrimination.

### Retaliation

Defendant additionally seeks summary judgment on plaintiff's claims of retaliation. Plaintiff alleges that defendant retaliated against him by giving him a Level 1 written reprimand for not wearing sideshields on his glasses on May 7, 1998, and by assigning him an undesirable task and verbally reprimanding him by use of racially offensive language on or about July 7, 1998.[3]

■ To establish a prima facie case of retaliation, plaintiff must show:

(1) protected opposition to discrimination or participation in a proceeding arising from discrimination; (2) adverse action by the employer contemporaneous with or subsequent to the protected activity; and (3) a causal connection between such activity and the employer's action.

*Williams v. Rice,* 983 F.2d 177, 181 (10th Cir.1993). Defendant challenges each of these elements as to one or both claims of retaliation.

### Protected Conduct/Causal Connection

■ "The requisite causal connection may be shown by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *McGarry v. Board of County Com'rs of County of Pitkin,* 175 F.3d 1193, 1201 (10th Cir.1999)(*quoting Burrus v. United Telephone Co. of Kansas, Inc.,* 683 F.2d 339, 343 (10th Cir.1982)). *See Marx v. Schnuck Markets, Inc.,* 76 F.3d 324 (10th Cir.1996) (holding close temporal link between protected activity and adverse employment action is enough to preclude

summary judgment on a retaliation claim), *cert. denied,* 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996). "In other words, [the plaintiff] must present some evidence that her employer undertook the adverse employment action for the purpose of retaliation." *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1320–1321 (10th Cir.1999). "Unless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation." *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1395 (10th Cir.1997). Events remote in time from a complaint undercut an inference of retaliatory motive. *See Burrus,* 683 F.2d at 343.

■ Defendant characterizes plaintiff's protected activity as his filing of this lawsuit on Feb. 12, 1998. Plaintiff alleges that his protected conduct is the subsequent "discovery phase" of the lawsuit. According to plaintiff's allegations, the parties exchanged their initial disclosures under Fed.F.Civ.P. 26(a)(1) on April 30, 1998, approximately a week before his reprimand, meeting the requisite closeness in time.

Plaintiff provides no legal authority for his assertion that the exchange of initial disclosures, or any other phase of the discovery process, constitutes protected activity for purposes of a retaliation claim. Plaintiff has shown no reason why the discovery phase of the lawsuit would create any adverse sentiment by the employer not already invoked by plaintiff's filing of the lawsuit, or would merit any new protection for the plaintiff. But even assuming, *arguendo,* that some law supported plaintiff's theory, defendant has shown the court that plaintiff's initial disclosures to

---

**3.** Although the pretrial order refers to a pattern of disciplinary action in retaliation for plaintiff's acts, no other disciplinary or other-

wise adverse acts by the defendant have been alleged.

which plaintiff refers were not sent until May 11, 1998. (Dk. 53, second unnumbered attachment). This date, being after the date plaintiff received the reprimand in question, cannot aid plaintiff in establishing his prima facie case.

Accordingly, the court considers the date plaintiff filed this lawsuit to be the date of his protected conduct. February 12, 1998, to May 6, 1998, is just short of three months. Here, no other evidence of a causal connection has been presented, and the plaintiff relies upon nothing but closeness in time to raise an inference of a causal connection. Given the lack of other circumstances raising such an inference, the court finds that this time period is insufficient to meet the requirement of a causal connection. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997) (affirming finding that a three-month period between the activity and termination, standing alone, does not establish a causal connection). The other events upon which plaintiff's retaliation claim is based are even later in time than three months, and the court's ruling above thus applies to them as well.

But even if the acts were closer in time, plaintiff has not attempted to show that either of the two persons who reprimanded him had any knowledge of plaintiff's protected conduct. Evidence of the acting party's knowledge is essential to establishing a causal connection between the adverse action and the protected activity. *See Williams*, 983 F.2d at 181. Plaintiff has not directed the court to any evidence showing that supervisor Allison knew of plaintiff's protected activity when he reprimanded plaintiff for not wearing his sideshields, or that acting supervisor Wessel knew of plaintiff's protected activity when he assigned plaintiff to the "catch-up" task. Absent this evidence, there can be no causal connection.

### Adverse Action

Further, the acts taken by Wessel on July 8th are not sufficient as to constitute adverse action. The Tenth Circuit liberally defines "adverse employment action," to cover more than quantifiable losses of salary or benefits. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir.1996). Acts need not be "material" in order to be actionable. That term does not extend, however, to " 'a mere inconvenience or an alteration of job responsibilities.' " *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir.1998). *See Heno v. Sprint/United Management Company*, 208 F.3d 847 (10th Cir.2000) (affirming summary judgment where plaintiff worked in the same job, for the same pay, with the same benefits, but defendant had moved her desk, monitored her calls, been "chilly" towards her, and suggested that she might do better in a different department).

Wessel's alleged name calling and his one-day or less reassignment of plaintiff to an undesirable task effected no change in the amount of compensation plaintiff received, and no change in the fundamental terms and conditions of his employment. Instead, those events constitute nothing but inconveniences and temporary and insignificant alteration of job responsibilities which are of insufficient degree here to constitute adverse action. *See Jeffries v. State of Kansas*, 147 F.3d 1220, 1231–32 (10th Cir.1998). Accordingly, the court finds that even had a causal connection been shown, plaintiff would fail to make a prima facie case of retaliation as to this claim.

### No Pretext

The court further finds that even if plaintiff had made a prima facie case, defendant had a legitimate non-retaliatory reason for its acts in relation to plaintiff's failure to wear sideshields. Plaintiff claims and defendant does not contest that

a white employee, Donnie Knutson, was given only a verbal reprimand approximately a week before May 7, 1998, for failing to wear sideshields. Plaintiff alleges that this shows race-based treatment. Defendant alleges that a material change in policy occurred in the week between Donnie Knutson's violation and plaintiff's, constituting a legitimate business reason for the difference in treatment of the two individuals.

Defendant has shown the court uncontradicted evidence that on May 5, 1998, shop superintendent Monte Johnson wrote and distributed a letter to all shop supervisors in Topeka regarding enforcement of safety rules. (Dk.43, Exh. 23). That letter states in pertinent part:

> it is required that we hold our people accountable for Rules/Policy violations ... WE WILL ALL BE HELD ACCOUNTABLE. If you are uncertain as to what your handling should be(coaching/counseling and training or placement into the disciplinary process of P.E.P.A.), please contact your General Foreman or myself.
>
> I have attached the current instruction for the application of the policy ...

(Dk.43, Exh. 23, p. 3). Defendant has not attached to this motion the instructions for application of the policy, or explained or attached copies of the "disciplinary process of PEPA," to aid the court in its understanding of what changes, if any, this letter actually required. Accordingly, the court places little reliance upon this letter alone.

Defendant has, however, established by uncontradicted testimony that prior to issuance of this letter, it was the understanding of at least one shop supervisors that he had the privilege to merely counsel or verbally reprimand employees for safety rule infractions, but that after issuance of the letter, he no longer had the option to do so, and issued formal letters of repri-

mand instead. (Dk.43, Exh. 2, p. 90, 91, 100–103.) This was consistent with Johnson's intent in sending the letter, which was to "emphasize that shop supervisors did not have the discretion to merely coach and counsel an unambiguous safety rule infraction." (Dk.43, Exh. 23, p. 2).

Plaintiff counters that a reasonable jury could disbelieve Johnson's testimony, and find that Johnson's letter to the supervisors was actually issued after the plaintiff had received his reprimand. In support of this assertion, plaintiff relies solely on the fact that Gary Allison, the general foreman responsible for enforcement of safety rules, did not tell plaintiff that he had received any such letter from Johnson on or about the day when he reprimanded plaintiff for not wearing sideshields, and the fact that no such letter was mentioned at the regular safety meetings which plaintiff attended on May 6 and May 7.

These facts fail to controvert Johnson's testimony that he wrote and distributed the letter to supervisors on May 5, 1998, which date is reflected on the face of the letter itself. No evidence shows the court that had such a letter been issued on May 5, 1998, it would have been discussed at the safety meeting that plaintiff attended, or that supervisor Allison would necessarily have informed plaintiff of the letter's issuance when reprimanding him.

Plaintiff's unsupported allegation that a jury could choose to disbelieve the uncontradicted facts does not create a material issue of fact for purposes this motion. "To defeat a summary judgment motion, plaintiffs cannot rely solely on the possibility that the factfinder might not believe the evidence. 'Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.' *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505; *see also Chauhan*, 897 F.2d at 127–28." *Jackson v.*

*Montgomery,* 999 F.2d 547, 1993 WL 261876, *4 (10th Cir.1993)(Table). Plaintiff has failed to do so as to this claim. Johnson's testimony as to the date he issued the letter contains no "weaknesses, implausibilities inconsistencies, incoherencies, or contradictions" warranting a finding that his statement was unworthy of credence. *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997).

█ Plaintiff additionally contends that Vance Ramsey, a white employee, was not issued a written reprimand for his safety violation, after the change in policy. Plaintiff alleges that Mr. Ramsey failed to maintain three-point contact with a crane while exiting from it, in violation of Rule 50.4.6. (Dk.55, Exh. 2).

Plaintiff's sole basis for this contention is the statement of co-employee Anderson. But Anderson allegedly told plaintiff only that he had seen Allison tear up a written reprimand for Ramsey after the alleged rule violation. (Dk.49, p. 8–9, No. 54). Plaintiff did not see Ramsey exit the crane on the date in question, and had no personal knowledge of the facts surrounding that event. Nor does the record reflect that Anderson saw Ramsey violate the three-point contact rule.

█ It is well established that Rule 56 precludes the use of inadmissible hearsay in depositions submitted in support of, or in opposition to, summary judgment. *Starr v. Pearle Vision, Inc.,* 54 F.3d 1548, 1555 (10th Cir.1995). Where a plaintiff relies upon "shop talk" or hearsay and lacks firsthand knowledge that other employees were similarly situated or were treated differently, such testimony is inadmissible in opposition to a motion for summary judgment. *Aramburu,* 112 F.3d at 1405. Anderson's statement to plaintiff constitutes classic hearsay.

Plaintiff replies that co-employee Anderson's statement falls within the party admission exception to the hearsay rule.

(Dk.49, p. 9). Yet plaintiff makes no attempt to show that Anderson was a "party" within the meaning of that term as used in Fed.R.Evid. 801(d)(2), or that the statement Anderson actually made to the plaintiff constituted an admission. (See Dk 43, Exh. 1, plaintiff's depo., p. 209–212). Accordingly, plaintiff has no admissible evidence in support of this claim.

In contrast, defendant has shown the court uncontradicted evidence that Mr. Ramsey did not violate the three point contact rule or any other written safety rule, but performed a different move which Allison believed to be unsafe. Allison later learned that no written rule prohibited the practice Ramsey had done and that it was common practice among crane operators, so handled the matter by counseling instead of by written reprimand, giving notice that a written reprimand would be issued in the future for such behavior. (Dk. 53, Att. 1, Allison affidavit).

Under these circumstances, plaintiff has failed to raise any inference of retaliation. It is uncontested that a written safety rule required plaintiff to wear sideshields, that plaintiff was well aware of that requirement, and that plaintiff failed to wear the required sideshields, giving rise to his written reprimand. Defendant has shown the court legitimate non-retaliatory reasons for treating Ramsey and Knutson differently than it treated the plaintiff, and plaintiff has not shown those reasons to be pretextual. Accordingly, plaintiff fails to make a prima facie case of retaliation for this reason as well.

### Affirmative Defense

█ As to the conduct allegedly engaged in by Wessel, defendant invokes the affirmative defense available to employers in hostile work environment cases, as established in *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). That case held that in

those cases in which an employee has suffered no tangible job consequences as result of supervisor's actions, a defense exists, comprised of two necessary elements:

    (a) that the employer exercised reasonable care to prevent and correct promptly and sexually harassing behavior, and
    (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

524 U.S. at 765, 118 S.Ct. 2257.

Defendant alleges that "the existence of the workplace harassment policy, combined with the immediate investigation into Hysten's complaint, fulfills the elements of [this] affirmative defense ..." (Dk.42, p. 29). In so doing, the defendant invites the court to ignore the second of the two elements set forth above. Defendant has failed to demonstrate that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer, and instead acknowledges that Hysten did complain of his treatment by Wessel. In short, defendant has failed to show its entitlement to this affirmative defense.

IT IS THEREFORE ORDERED THAT defendant's motion for summary judgment (Dk.41) is granted.