Larry D. HYSTEN, Plaintiff–Appellant,

v.

BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPA-
NY, Defendant–Appellee.

No. 01–3098.

United States Court of Appeals,
Tenth Circuit.

July 30, 2002.

Alan V. Johnson (Stephen D. Lanterman with him on the briefs) of Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., Topeka, Kansas, for Plaintiff–Appellant.

David R. Cooper of Fisher, Patterson, Sayler & Smith, L.L.P., Topeka, Kansas, for Defendant–Appellee.

Before TACHA, Chief Judge, BALDOCK, and LUCERO, Circuit Judges.

LUCERO, Circuit Judge.

Plaintiff Larry D. Hysten was employed as a journeyman freight car mechanic by defendant Burlington Northern ("Burlington Northern" or "BNSF") and its predecessor, Santa Fe Railroad, for approximately twenty-two years. His suit under 42 U.S.C. § 1981 consists of claims that Burlington Northern suspended him for forty days because he is an African–American and then engaged in retaliatory activity designed to punish him for undertaking protected opposition to discrimination. In a published opinion, the district court granted defendant's motion for summary judgment. *Hysten v. Burlington N. & Santa Fe R.R.*, 167 F.Supp.2d 1239 (D.Kan.2001). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I

At a mandatory safety meeting held February 13, 1996, plaintiff "went ballistic" after noticing a letter—the third in recent months—regarding his absenteeism on supervisor Dennis Harvey's clipboard. (Appellant's App. at 100.) When plaintiff asked to see the individual who wrote the letter, Harvey asked that he wait until the meeting ended. Then, plaintiff went into a tirade and left the meeting—without permission—to speak to the union steward, Kenny Norton.

Plaintiff returned to the meeting and later that day asked Harvey for a vacation day. Harvey approved the request, telling plaintiff at the end of the shift to "have a nice vacation day." (*Id.* at 38.) By his own account, plaintiff replied, "yeah, I'm going out and buy a gun." (*Id.*) After saying this, plaintiff laughed.

Harvey reported plaintiff's conduct to Harvey's supervisor, Jim Hall, and General Equipment Foreman Art Botello the next day. A formal investigation yielded plaintiff a Level 5 reprimand and a forty-five day suspension for violating company Rule 1.15 for leaving the meeting without permission, and Rule 1.16 for being insubordinate, quarrelsome, and discourteous. On February 12, 1998, this race discrimination suit was filed.

Almost three months after suit was filed, Shop Superintendent Monte Johnson issued a memorandum to all supervisors emphasizing the importance of safety-rule enforcement. The May 5, 1998 letter stated: "It is required that we hold our people accountable for Rules/Policy violations.... *WE WILL ALL BE HELD ACCOUNTABLE.*" (Appellee's App. at 186.) The next day, plaintiff reported to work without proper safety glasses, in violation of workplace rules. He received a written Level 1 reprimand. Plaintiff amended his complaint to include a charge that defendant took this action in retaliation for his discrimination suit.

## II

We independently review the district court's summary judgment determi-

nation, applying the following principles de novo. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir.1999). Rule 56 of the Federal Rules of Civil Procedure states that summary judgment "must be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■■■ "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is made, however, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Although a metaphysical doubt as to the material facts does not suffice to preclude summary judgment, the nonmoving party should be given the benefit of all reasonable inferences in making the genuine-issue determination. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); *Simms,* 165 F.3d at 1326 ("[W]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.").

## III

■■■ Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The statute provides that all persons "shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b).

Lack of direct evidence of discrimination is not fatal to a § 1981 claim. A discrimination case may be proven indirectly, as plaintiff attempts here, within the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Recently, we summarized that framework in *Kendrick v. Penske Transportation Services., Inc.*

> [T]he plaintiff must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. Once the plaintiff has established a prima facie case, the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

220 F.3d 1220, 1226 (10th Cir.2000) (quotations omitted). As explained below, we conclude that plaintiff's disparate treatment and retaliation claims fail at the prima facie stage.

## A. Disparate Treatment

■ The district court held that a plaintiff wishing to establish a prima facie case "in cases such as this ... must show that 1) he belongs to a protected class, 2) he suffered an adverse employment action, and 3) defendant treated similarly situated employees differently." *Hysten*, 167 F.Supp.2d at 1243. On appeal, plaintiff takes issue with the third part of this test. He relies on *Kendrick*, which holds that a discriminatory discharge claimant does not have to show that the employer treated similarly situated non-minority employees more favorably in order to make a prima facie case. 220 F.3d at 1229. Such a claimant need only show that "(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge." *Id.* (citing *Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir.1999)).

■■ *McDonnell Douglas* defines the prima facie elements for the archetypal discrimination case, an employer's discriminatory failure to hire a qualified employee. Under *McDonnell Douglas*, a prima facie claim may be made

> by showing (i) that [plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. 1817. This definition carries a caveat: "The facts necessarily will vary ..., and the specification above of the prima facie proof required ... is not necessarily applicable in every respect to differing factual situations." *Id.* at 802 n. 13., 93 S.Ct. 1817 Likewise, the Supreme Court in *Furnco Construction*

*Corp. v. Waters* emphasized that *McDonnell Douglas* never intended to set "an inflexible rule." 438 U.S. 567, 575, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). The real question, it must be remembered, is whether a plaintiff has shown "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act." *Id.* at 576, 98 S.Ct. 2943 (quotation omitted).

■ On the basis of these precedents, we conclude both that the district court may have overstated plaintiff's prima facie burden and that the test applied in *Kendrick* is inapplicable here. A plaintiff in a discriminatory suspension case—as distinguished from a discriminatory discharge case—makes out a prima facie case upon showing: (1) that plaintiff belongs to a protected class; (2) that he suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir.2000). Our disagreement with the district court is largely one over semantics because ordinarily the third part of this test will be satisfied by proof that the employer treated similarly situated employees more favorably. *Id.* We stress, however, that "courts must be sensitive to the myriad of ways such an inference can be created." *Equal Employment Opportunity Comm'n v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir.1990).

The test applied in *Kendrick* is inapplicable to the facts in this case. Proof that a qualified individual in a protected class was discharged and that his position remained open after the discharge raises an inference of discrimination because it eliminates the two most common legitimate justifications for discharge—lack of qualifi-

cation and elimination of a position. *Perry*, 199 F.3d at 1140. The same cannot be said in the suspension context. Proof that a qualified individual in a protected class was suspended and that his position remained after the suspension does not eliminate the common legitimate justification for suspension—violation of workplace rules—and thus does not warrant an inference of discrimination. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311–12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) ("As the very name 'prima facie case' suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a legally mandatory, rebuttable presumption." (citation and quotations omitted)); *Kendrick*, 220 F.3d at 1227 n. 5 ("Collapsing the four-part prima facie case of *McDonnell Douglas* into a three-part test may occasionally be helpful when addressing discrimination claims that either do not fall into any of the traditional categories (e.g., hiring or discharge) or present unusual circumstances.").

With this understanding, we proceed to determine whether plaintiff, who defendant concedes is in a protected class and suffered an adverse employment action, presented sufficient proof of circumstances giving rise to an inference of racial discrimination to satisfy the third part of his prima facie burden. *Jones*, 203 F.3d at 753. We conclude that plaintiff did not.

### 1. Evidence of More Favorable Treatment of Similarly Situated Employees

A plaintiff wishing to prove discriminatory animus with evidence that his employer treated him differently from other employees bears the burden of showing that the comparison is legally relevant—i.e., that the employees were similarly situated. *Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir.2001). Plaintiff first points to Burlington Northern's investigation of white employee R.T. Pytel, who was accused of threatening an employee of color, David Tyree. Tyree complained that Pytel threatened him by saying, "Get the he—outta here before I take my [ ]gun and blow him away or his head off." (Appellee's App. at 167.) Burlington Northern claims that Tyree's complaint did not bloom into a formal investigation because the allegations were uncorroborated. Of the witnesses interviewed, none substantiated Tyree's claims, and one—Willie King—accepted responsibility for instigating Tyree's complaint, stating that it was he, and not Pytel, who told Tyree, "[W]e better get out of here, old Py is pretty good with a shotgun." (*Id.* at 122; *see also id.* at 85–86.) Eventually, King received a reprimand for playing a practical joke that led to the heated discussion, and both King and Tyree were reprimanded for using profanity.

Plaintiff does not demonstrate that he and Pytel are similarly situated. Although the Pytel investigation produced only unsubstantiated claims that he threatened a fellow employee, the record casts no doubt on the fact that plaintiff was disciplined after he was grossly insubordinate. For this reason, the proposed comparison is legally irrelevant.

Along the same lines, plaintiff claims that Johnson used subjective criteria in disposing of Pytel's investigation more leniently. *See Pitre v. W. Elec. Co.*, 843 F.2d 1262, 1271–72 (10th Cir.1988) (stating that basing an employment decision on a subjective consideration "entitles the plaintiff to the benefit of an inference of discrimination" (quotation omitted)). The only fact in this regard is that Johnson had a "gut feeling" about the credibility of the respective charges against Pytel and plaintiff. We are unconvinced by this argument because, again, the two employees

were not in sufficiently similar circumstances to support an inference of discrimination based on their different treatment.

### 2. Conduct in Contravention of a Written Policy

██ There is also a contention that defendant acted contrary to written company policy in issuing the suspension because

> Mr. Johnson testified that he considered the plaintiff's disciplinary record in deciding to issue him a Level 5 suspension. This was contrary to BNSF's written disciplinary policy, since all of the plaintiff's accumulated demerits had been assessed prior to 1987. BNSF's discipline policy states that "three years after the date of each minor offense, that minor offense may no longer be taken into consideration in the determination of the level of discipline for a current union offense."

(Appellant's Br. at 22 (citations omitted).) Plaintiff misquotes the company policy, which actually states that after three years, a minor offense "may no longer be taken into consideration in the determination of the level of discipline for a current *minor* offense." (Appellant's App. at 96 (emphasis added).) The misconduct for which plaintiff was disciplined was not "minor" under the policy. Defendant's policy defined three levels of offenses—minor offenses; serious offenses; and offenses that are cause for dismissal. Included in the third, most serious category are insubordination and "[r]esponsibility for serious altercation." (*Id.* at 98.)

Because plaintiff failed to produce proof of circumstances giving rise to an inference of unlawful discrimination, we conclude that summary judgment on his disparate treatment claim was proper.

### B. Retaliation

██ The language of § 1981 has been interpreted to include retaliation lawsuits. *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1258 (10th Cir.2001). Because there is no direct evidence of retaliatory motive, we review the evidence under the *McDonnell Douglas* burden-shifting framework. To establish a prima facie case of retaliation, plaintiff must show that "(1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *O'Neal*, 237 F.3d at 1252. We agree with the parties that the filing of a § 1981 discrimination complaint is a protected opposition activity. *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980); *see also O'Neal*, 237 F.3d at 1253 (holding that a filing with the Equal Employment Opportunity Commission is a protected activity). We also agree that plaintiff's May 7, 1998 written reprimand constituted an adverse employment action. *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir.1998).

██ Nevertheless, although plaintiff meets the first two parts of his prima facie burden, we side with the district court's conclusion that he failed to create a genuine factual issue regarding causal connection. In this regard, plaintiff points to the temporal proximity between his protected activity and the written reprimand. Almost three months passed between February 12, 1998, when plaintiff's lawsuit was filed, and May 6, 1998, when the alleged retaliatory act occurred.

Our opinion in *Marx v. Schnuck Markets, Inc.* illustrates the concept of temporal proximity and its utility in proving retaliatory intent. 76 F.3d 324, 329 (10th Cir.1996). *Marx* arose under the Fair Labor Standards Act ("FLSA") and the Age

Discrimination in Employment Act. In *Marx*, we did not rely solely on temporal proximity but looked to "the pattern of actions taken by defendant" in that case. *Id.* This analysis was entirely consistent with our other cases, which hold that "unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999); *O'Neal*, 237 F.3d at 1253 (same). We also applied this rule in *Richmond v. ONEOK, Inc.*, where a three-month lag between protected activity and termination was not close enough to establish causation in light of all the facts. 120 F.3d 205, 209 (10th Cir.1997).

▮ Having examined plaintiff's circumstantial evidence in its totality, *see Simms*, 165 F.3d at 1331, we cannot say that the proximity between plaintiff's filing of his complaint and the challenged employment consequence permits an inference of causation.[1]

In anticipation of this conclusion, plaintiff asserts there is a very close temporal proximity because his written reprimand could have been in retaliation for his continued litigation of the case—e.g., he filed responses to discovery requests on April 30, 1998. (Appellant's Br. at 24.) If that is true, then his suspension occurred just six days after his protected activity. We intimate no opinion regarding this contention except to say that the proximity between a specific litigation activity and the

alleged retaliatory act is meaningless unless those who caused the alleged retaliatory act to occur are shown to have been aware of the specific activity. *See Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir.1999). Plaintiff does not make this showing, and thus, we agree that summary judgment was appropriate.

## IV

The judgment is **AFFIRMED.**

---

1. Plaintiff puts forth, as further proof of causation, evidence that another employee who failed to wear adequate eye gear was treated more favorably just a week before plaintiff's reprimand. This is not a relevant comparison in light of the intervening letter stating that there would be stricter accountability for safety rules infractions.

   Plaintiff also puts forth inadmissible hearsay evidence for the proposition that white

employee Vance Ramsey was not formally reprimanded even though he violated a safety rule—i.e., the "three-point contact rule"—after the May 5, 1998 letter. (Appellant's Br. at 14.) The only admissible evidence regarding Ramsey is General Equipment Supervisor Gary Allison's affidavit, in which he states that "Ramsey did not violate the three-point contact rule." (Appellant's App. at 86.)