Janice K. PRITCHETT, Plaintiff,

v.

WESTERN RESOURCES,
INC., Defendant.

No. 00–4191–JAR.

United States District Court,
D. Kansas.

April 12, 2004.

Tommy L. Green, Topeka, KS, for Plaintiff.

David P. Mudrick, Thomas E. Wright, Wright, Henson, Clark & Baker LLP, Topeka, KS, for Defendant.

## MEMORANDUM & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBINSON, District Judge.

This matter comes before the Court on defendant Western Resources, Inc.'s Motion for Summary Judgment (Doc. 79) on plaintiff's claims of hostile work environment and sex discrimination. Plaintiff has not filed a response.[1] For the reasons set forth below, defendant's motion is granted.

### I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[2] The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[3] Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.[5] Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.[6] "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial."[7] Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[8] The court must consider the record in the light most favorable to the nonmoving party.[9]

Although plaintiff has not responded to defendant's motion, this alone does not make summary judgment proper, for plaintiff's burden to respond arises only if the motion is properly supported in the

1. Not only did plaintiff neglect to meet the deadline for filing a response to defendant's summary judgment motion, but defendant notified both plaintiff and this Court of plaintiff's failure to meet the deadline in a letter dated February 17, 2004. Even after receiving this notification, plaintiff has not responded or requested an extension for excusable neglect under Fed.R.Civ.P. 6(b)(2).

2. Fed.R.Civ.P. 56(c).

3. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

4. Id. at 251–52, 106 S.Ct. 2505.

5. See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

6. See Anderson, 477 U.S. at 256, 106 S.Ct. 2505.

7. Id.

8. See id.

9. See Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir.1984), cert. denied 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

first instance.[10]  "Accordingly, summary judgment is appropriate under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c)."[11]  If the evidence presented by the moving party does not satisfy this burden, "summary judgment must be denied *even if no opposing evidentiary matter is presented.*"[12]  Thus, if a nonmoving party fails to respond to a motion for summary judgment, the court must first examine the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and that the moving party is entitled to judgment as a matter of law.[13]

## II.  Uncontroverted Facts [14]

Plaintiff has been employed by defendant since March 1990 as an Auxiliary Equipment Operator (AEO) at the Jeffrey Energy Center.  In 1995 or 1996, plaintiff bid for a position as a Control Room Officer (CRO).  CRO positions are available upon bidding by an employee on a seniority basis.  Because plaintiff did not have enough seniority when she bid for the CRO position, her bid was unsuccessful. Plaintiff did not bid for vacant CRO positions posted July 15, 1996, December 25, 1996, or February 1997, but rather remained employed as an AEO.

In 1996, Harold Stowers, plaintiff's supervisor, said that he might be considered a male chauvinist because he did not think women were as physically strong as men. Plaintiff agreed with his opinion about the relative strength of men and women.  Later, in 1997, plaintiff inadvertently heard Stowers making fun of her over the phone about her performance when a yard belt stopped.  Based on Stowers' comments, plaintiff filed an internal complaint.  Defendant investigated plaintiff's complaint and at the conclusion of the investigation, excluded Stowers from performing evaluations of plaintiff.  While plaintiff was upset by Stowers' conduct, she admits that neither Stowers nor any other supervisor ever made a sexually derogatory comment to her.

Following a generator explosion at Jeffrey and a boiler explosion at defendant's Lawrence plant in 1996, defendant announced an employee performance and skills evaluation program.  Under the program, employees in defendant's Generation Services Group were to be evaluated annually.  The program, which applied to over 250 male and female employees at Jeffrey alone, sought to raise operators' skill levels.  Under the program if a performance evaluation showed that an employee was deficient in certain critical skill areas, a formal retraining plan was created.  Employees with uncompleted formal training plans were not qualified to bid for CRO positions.

On November 27, 1997, plaintiff received a number of "2s" on the skills portion of her evaluation.  Because "2s" were considered marginal, plaintiff was required to participate in retraining.  Plaintiff was no-

---

10.  *See Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir.2002).

11.  *Id.* at 1194.

12.  *Id.*

13.  *Id.* at 1194–95.

14.  D. Kan. 56.1(a) provides that "All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically contro-

verted by the statement of the opposing party."  By failing to file a response to defendant's summary judgment motion, "[plaintiff] waived the right to file a response and confesse[d] all facts asserted and properly supported in the motion."  *Murray v. City of Tahlequah,* 312 F.3d 1196, 1199 (10th Cir. 2002).  Thus, to the extent defendant's factual allegations find support in the record, the court has accepted them as true.

tified in April 1998 that she was being placed in retraining. Although some employees, including females, successfully sought reconsideration of their evaluations, plaintiff chose not to make such a request. Plaintiff failed to complete her retraining within the allotted six-month time period when she scored a 73% on a retraining test, 7% below the required 80% passing score.

On July 1, 1999, plaintiff completed her retraining, albeit four months outside the allotted time frame. Plaintiff admits she is not aware of anyone else who failed to timely complete their training who was treated differently than she was. While plaintiff was not allowed to bid for a CRO position posted on February 24, 1999, because she was participating in retraining, other male and female employees were similarly disqualified. During the period plaintiff participated in retraining, she was never decertified from her position or demoted, never lost her job, and never lost any pay or benefits. Moreover, plaintiff was allowed to work the same amount of overtime in retraining that she would have otherwise worked as an AEO.

While plaintiff was required to participate in retraining, Jim Scroggins, a male AEO employee was also subjected to retraining. Scroggins had been employed as an AEO longer than plaintiff had been. Similar to plaintiff, Scroggins was given two chances to pass his retraining tests. And, the same 80% pass rate that applied to plaintiff applied to the male employees at Jeffrey, including Scroggins and Steve Vetsch, who both failed retraining tests. Scroggins was also disqualified to bid on the vacant CRO position posted February 24, 1999, just as plaintiff was, because both plaintiff and Scroggins were participating in retraining. Unlike plaintiff who successfully completed retraining, however, Scroggins was decertified from his AEO position after he ultimately failed in his retraining.

In April 1999 while she was participating in retraining, plaintiff was assigned to work on the dumper and stacker, a portion of her regular duties. Plaintiff was assigned to work solely on the dumper and stacker, which were less critical to Jeffrey, because she had twice rated low on key skill areas associated with some of her duties. Defendant did not feel comfortable assigning plaintiff to more critical duties due to her two poor evaluations. Scroggins was also limited to dumper and stacker duties while he participated in retraining. Plaintiff was never subjected to oral or written warnings as a result of being placed only on dumper and stacker duties during part of her retraining, lost no pay or benefits and was not demoted. Nor did plaintiff file an internal complaint with defendant, complain to management or lodge a grievance with her union regarding being limited to dumper and stacker duties.

When plaintiff successfully completed retraining, she became "fully certified" and could perform her regular duties again; she also became eligible to apply for vacant CRO positions. Although plaintiff was qualified to bid for a CRO position by July 1, 1999 when she was fully certified, she did not apply for a CRO position posted on July 6, 1999. Nor did plaintiff bid on any other openings until April 2003. A CRO position was posted at Jeffery in fall or winter of 1999 during the period plaintiff was off work due to an off-the-job foot injury. Defendant did not personally notify plaintiff of this opening because the labor agreement does not require such notification, nor is it the standard policy of defendant. In fact, plaintiff concedes, "[t]hey don't have to notify you at home." When plaintiff finally bid for a vacant CRO slot in April 2003, she was selected to

enter training for a position based on her bid and in accordance with her seniority. Plaintiff is currently progressing through training.

On October 27, 1999, plaintiff filed a charge with the Kansas Human Rights Commission (KHRC) claiming discrimination on the basis of sex and age.[15] Although an attorney assisted plaintiff draft her charge, no hostile work environment claim appears in her charge. Plaintiff's complaint of a hostile work environment in this case is based in part upon her encounters with Stowers in 1996 and 1997. Additionally, plaintiff notes that a supervisor once yelled at her for not walking the upper belts during an ice storm and that a non-management Union steward cussed at her once. She complained to management about the cussing and never had any other problems with the individual. Plaintiff also claims to have seen an offensive, doctored picture of two women at Jeffrey, but she never complained about the picture, nor was the picture brought to the attention of any supervisor. Further, plaintiff claims to have seen a document from a non-management employee joking about foul language, but she never brought this document to the attention of management either. And, although a Union steward allegedly created a memorandum about how to speak to women and be politically correct, plaintiff could not recall ever seeing the memorandum. Finally, plaintiff admits that neither supervisor Stowers, nor any other supervisor, ever made a sexually derogative comment to her.

In December 1998, plaintiff attended a mandatory class on equal employment opportunity where she received the defendant's Policy Against Discrimination and Harassment (anti-discrimination policy). At the class, plaintiff also received defendant's Policy Against Sexual Harassment (anti-harassment policy). Defendant's anti-discrimination policy contains a section devoted exclusively to hostile environment, a section devoted exclusively to a complaint procedure, and a section which specifically prohibits any retaliation against any employee who reports harassment. Similarly, the anti-harassment policy includes a section discussing disciplinary actions to be taken against violators. However, plaintiff did not file any internal charge with defendant in relation to a hostile environment or discrimination based on sex. Additionally, although plaintiff was aware that the collective bargaining agreement between her Union and defendant contained a "no discrimination" provision that prohibited discrimination on the basis of sex and various other factors, plaintiff did not file a grievance with defendant alleging sex discrimination or hostile work environment.

### III. Analysis

#### A. Plaintiff's hostile work environment claim

Defendant argues that summary judgment is appropriate on plaintiff's hostile work environment claim because 1) she chose not to include such a claim in her administrative complaint; 2) she cannot produce sufficient evidence to show that a sexually hostile work environment existed at · Jeffrey; and 3) she failed to follow defendant's policy against sexual harassment by neglecting to file a complaint with defendant alleging a sexually hostile environment.

#### 1. Failure to administratively exhaust

In its summary judgment motion, defendant notes that plaintiff did not raise a hostile work environment claim in her

---

**15.** Defendant's Complaint in this case alleged only sex discrimination and a sexually hostile work environment.

KHRC charge. A plaintiff is required to exhaust her administrative remedies before filing a Title VII lawsuit.[16] Requiring a plaintiff to exhaust her administrative remedies serves two purposes: "to give notice of the alleged violation to the charged party, and to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance."[17] If a complaint were allowed to encompass allegations outside the ambit of the predicate charge, this would circumvent the administrative agency's investigatory and conciliatory role and deprive the charged party of notice of the charge.[18] Furthermore, "because failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show by competent evidence that she did exhaust."[19]

In general, a plaintiff may not bring a claim unless it was part of the timely-filed administrative charge.[20] The Tenth Circuit "has adopted a limited exception to the exhaustion rule."[21] The exception permits lawsuits to include allegations of discrimination not listed in the EEOC filing, if they are reasonably related to the allegations listed in the administrative charge.[22] Where the conduct alleged falls within the scope of an EEOC investigation that would reasonably grow out of charges actually made, consideration of complaints not expressly included in the EEOC charge is appropriate.[23]

█ Plaintiff's hostile work environment claim must fail because she has not met her burden of showing by competent evidence that she exhausted her administrative remedies. Rather, plaintiff's KHRC complaint, which was forwarded to the EEOC, demonstrates that plaintiff never raised a sexually hostile work environment claim. Plaintiff made detailed factual allegations in her KHRC complaint concerning her claims of discrimination. Namely plaintiff complained about "being subjected to differential terms and conditions of employment because of my sex, female and my age," which involved being told that she had failed to complete retraining in the time allowed, being removed from all but two jobs until she finished retraining, and having to take a closed-book test with a required 80 percent pass rate. All plaintiff's complaints deal solely with disparate treatment, not with a sexually hostile environment. Moreover, none of plaintiff's complaints are reasonably related to a hostile work environment claim making the Tenth Circuit's limited exception to the exhaustion rule inapposite as well.

### 2. Lack of sufficient evidence

█ Even if not procedurally barred, defendant argues that plaintiff's claim of a sexually hostile work environment fails as

---

**16.** *Budenz v. Sprint Spectrum, L.P.,* 230 F.Supp.2d 1261, 1270 (D.Kan.2002); *Jones v. Denver Post Corp.,* 203 F.3d 748, 755 (10th Cir.2000) (citation omitted).

**17.** *Smith v. Bd. of Public Utils.,* 38 F.Supp.2d 1272, 1284 (D.Kan.1999) (citing *Ingels v. Thiokol Corp.,* 42 F.3d 616, 625 (10th Cir. 1994)).

**18.** *Id.* (citation omitted).

**19.** *McBride v. CITGO Petroleum Corp.,* 281 F.3d 1099, 1106 (10th Cir.2002).

**20.** *Wallace v. Beech Aircraft Corp.,* 87 F.Supp.2d 1138, 1145–46 (D.Kan.2000) (citing *Simms v. Oklahoma ex rel. Dept. of Mental Health,* 165 F.3d 1321, 1326 (10th Cir.1999)).

**21.** *Id.*

**22.** *Jones v. Denver Post Corp.,* 203 F.3d at 755 (citing *Aramburu, v. Boeing Co.,* 112 F.3d 1398, 1409 (10th Cir.1997)).

**23.** *Smith v. Bd. of Public Utils.,* 38 F.Supp.2d at 1284 (citing *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1416 n. 7 (10th Cir.1993)).

a matter of law. To survive a summary judgment motion on a hostile work environment claim under Title VII, plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[24]

In requiring a showing of a workplace permeated by severe or pervasive discriminatory conduct, the Supreme Court struck a balance between two extremes, creating "a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury."[25] In so doing, the Supreme Court excluded from actionable conduct that which is "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing," because Title VII was not meant to be a "general civility code."[26] "[S]imple teasing, ... offhand comments, and isolated incidents (*unless extremely serious*) will not amount to discriminatory changes in the terms and conditions of employment."[27] On the other hand, conduct need not be so severe or pervasive that it seriously affects a plaintiff's psychological well-being.[28]

The determination of whether a hostile work environment existed "is not, and by its nature cannot be, a mathematically precise test."[29] The court should consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[30] This consideration of the totality of the circumstances is warranted, "because the very term 'environment' indicates that allegedly discriminatory incidents should not be examined in isolation," but should be examined in the context in which they occurred.[31]

Plaintiff's allegations of a sexually hostile work environment fall far short of the severe or pervasive conduct required for an actionable claim. In her complaint, plaintiff alleged that a "pervasive sexually hostile environment exists at [Jeffrey] which results in the constant demeaning of females as workers."[32] Plaintiff's complaint of a hostile environment is based in part upon her encounters with Stowers in 1996 and 1997. In 1996, while employed as an AEO, Stowers said that he might be considered a male chauvinist because he did not think women were as physically strong as men, a comment with which plaintiff agreed. Later, in 1997, Stowers made fun of plaintiff over the phone about her performance when a yard belt stopped. Plaintiff admits, however, that neither supervisor Stowers, nor any other supervisor, ever made a sexually derogative comment to her.

Additionally, plaintiff notes that a supervisor once yelled at her for not walking the

---

**24.** *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1219 (10th Cir.2003).

**25.** *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

**26.** *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citations omitted).

**27.** *Id.* (internal quotations omitted) (emphasis added).

**28.** *Nieto v. Kapoor*, 268 F.3d 1208, 1219 (10th Cir.2001) (citation omitted).

**29.** *Id.* at 1220 (citation omitted).

**30.** *Faragher*, 524 U.S. at 787–88, 118 S.Ct. 2275.

**31.** *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 925 (10th Cir.2001).

**32.** Pl. Compl. ¶ 9.

upper belts during an ice storm and that a Union steward who is not in management cussed at her once. She complained to management about the cussing and never had any other problems with the individual. Plaintiff also claims to have seen an offensive, doctored picture of two women at Jeffrey, but she never complained about the picture, nor was the picture brought to the attention of any supervisor. Further, plaintiff claims to have seen a document from a non-management employee joking about foul language, but she never brought this document to the attention of management either. And, although a Union steward allegedly created a memorandum about how to speak to women and be politically correct, plaintiff could not recall ever seeing the memorandum.

In considering the totality of the circumstances, the Court concludes that no rational jury could find that plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Most of plaintiff's allegations, which spanned more than ten years of employment, were not ever sexual or harassing in nature. Moreover, plaintiff admits that she was never subjected to any sexual derogatory comments from any supervisor.

Assuming *arguendo* plaintiff could show that a hostile environment existed at Jeffrey, she has not shown any basis for defendant's liability. Plaintiff has not demonstrated that defendant was negligent in failing to take reasonable action to remedy a hostile work environment that it knew or should have known about, or that the harassment was within the actual or apparent authority of the alleged perpetrator's employment.[33] No evidence exists that defendant was negligent. In fact, defendant did not even receive proper notice of the alleged hostile work environment; plaintiff neither included a hostile work environment claim in her KHRC charge, nor utilized defendant's internal complaint procedure. Certainly defendant could not have failed to take reasonable action to remedy a situation of which it was unaware. Further, plaintiff has not shown that any alleged harasser had actual or apparent authority for the claimed harassment. Thus, summary judgment must be granted for defendant on plaintiff's hostile work environment claim.

### 3. Faragher/Burlington Affirmative Defense

Defendant contends that even if plaintiff could show that a hostile environment existed and that management was aware of the environment, it still is not liable because it has a valid affirmative defense. Under the landmark *Faragher*[34] and *Burlington*[35] cases, when the harassing supervisor has not taken a tangible employment action against the victimized employee, the employer has an affirmative defense.[36] The employer must prove by a preponderance of the evidence "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing[37]

---

**33.** *See Watson v. City of Topeka,* 241 F.Supp.2d 1223, 1233 (D.Kan.2002) (citing *Ford v. West,* 222 F.3d 767, 775–76 (10th Cir.2000)).

**34.** 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662.

**35.** 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633.

**36.** *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275.

**37.** *See Ford v. West,* 222 F.3d at 776 n. 8 (10th Cir.2000) (noting that employer liability standards are equivalent for race and sex-based discrimination) (citations omitted).

behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." [38]

■■■ Plaintiff has suffered no adverse employment action. An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." [39] Conduct that results in "a mere inconvenience or an alteration of job responsibilities" is not an adverse employment action.[40] Plaintiff cannot show that any of her supervisors took a tangible employment action against her. Rather, plaintiff has not been disciplined since 1997 when she received an oral warning with which she agreed. Nor has plaintiff been demoted, or had any pay or benefits taken away.

Because defendant has not taken a tangible employment action against plaintiff, it may assert the *Faragher/Burlington* affirmative defense. The preponderance of the evidence demonstrates that defendant is not liable by virtue of the affirmative defense. In December 1998, plaintiff attended defendant's mandatory training class on equal employment opportunity. At that class, plaintiff received both defendant's anti-discrimination and anti-harassment policies, demonstrating her awareness of defendant's practices and procedures. The anti-discrimination policy has sections devoted exclusively to hostile work environments, and includes a complaint procedure. Similarly, the anti-harassment policy contains a section discussing disciplinary actions to be taken against violators. Plaintiff too was aware

that a collective bargaining agreement between her Union and defendant contained a "no discrimination" provision that prohibited discrimination on the basis of sex and various other factors. At no time did plaintiff file any charges with defendant pursuant to defendant's anti-discrimination or anti-harassment policies. Nor did plaintiff file any grievance as permitted by her Union's collective bargaining agreement. Because defendant had an anti-discrimination and anti-harassment policy with a complaint procedure of which plaintiff was aware, and plaintiff failed to register a complaint about the alleged hostile environment, defendant is not liable for the claimed sexually hostile environment.

### B. Plaintiff's Disparate Treatment Claim

Plaintiff bases her sex discrimination claim on: 1) the denial of the opportunity to be promoted to a CRO; 2) being subject to the retraining program; and 3) being limited to certain duties for a three-month period. Defendant argues that summary judgment is appropriate on plaintiff's disparate treatment claim because she cannot make out a prima facie case of sex discrimination, and even if she could prove a prima facie case, defendant had legitimate non-discriminatory reasons for its actions. Additionally, defendant claims plaintiff's disparate treatment claims are barred in whole or part by the statute of limitations. Finally, defendant argues that even if summary judgment is denied on the merits, plaintiff should be precluded from claiming certain damages.

Because plaintiff's claims are based upon indirect evidence of sex discrimination, the Court must analyze her claims under the burden-shifting approach of *McDonnell*

---

**38.** *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275.

**39.** *Tran v. Trustees of State Colleges in Colorado,* 355 F.3d 1263, 1267 (10th Cir.2004).

**40.** *Id.*

*Douglas v. Green.*[41] Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case.[42] Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its decision.[43] If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.[44]

### 1. Failure to promote

■ Plaintiff claims that her failure to be selected for a CRO slot was discriminatory. To establish a prima facie case for discriminatory failure to promote under Title VII, plaintiff must demonstrate that: 1) she is in a protected class; 2) she applied for and was qualified for the promotion; 3) despite her qualifications, she was not promoted to the position; and 4) the promotional opportunity was filled.[45] Defendant concedes that plaintiff meets the first prong of the prima facie case.

■ Because plaintiff did not apply for a CRO slot during the period when she was qualified to bid on the position, plaintiff cannot establish the second prong of her prima facie case. Vacant CRO positions are available on a seniority basis. In 1995 or 1996, when plaintiff bid for a promotion to a CRO, she was unsuccessful due to her lack of seniority. Plaintiff did not bid for open slots in 1996 or 1997. Additionally, plaintiff did not bid for a position in February 1999 because she was disqualified due to her placement in retraining; moreover, plaintiff testified that she is unsure whether she had sufficient seniority to be awarded the slot even if she had been qualified to bid. Plaintiff has offered no evidence that she was qualified to bid for *any* of the CRO positions. Consequently, plaintiff's lack of seniority and placement in retraining disqualified her from the CRO positions, and she cannot satisfy the second prong of her prima facie case.

■ Assuming *arguendo* plaintiff could establish that she was qualified for a CRO position, her claim would still fall short for lack of an adverse employment action. Notably, after she both bid for and attained the requisite seniority, plaintiff was awarded a CRO slot and is now progressing through the CRO program. However, a several month delay in achieving a desired position does not constitute an adverse employment action in the absence of some other negative or unfavorable effect from the delay.[46] In plaintiff's case this is particularly so because achieving a CRO position does not itself result in a wage increase or any other significant change in benefits. Thus, plaintiff's prima facie case also fails because she cannot demonstrate an adverse employment action.

■ Even if plaintiff could establish a prima facie case of discrimination, defendant is not liable because it had legitimate, nondiscriminatory reasons for not promoting plaintiff in 1999. Plaintiff was not selected for an open CRO slot in February 1999 because she was still participating in retraining. Both male and female employees with uncompleted formal retraining plans were disqualified from bidding, in-

---

41. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

42. *Hysten v. Burlington N. & Santa Fe Ry. Co.,* 296 F.3d 1177, 1180 (10th Cir.2002).

43. *Id.*

44. *Id.*

45. *Jones v. Barnhart,* 349 F.3d 1260, 1266 (10th Cir.2003); *see also Amro v. Boeing Co.,* 232 F.3d 790, 796 & n. 2 (10th Cir.2000) (clarifying that the fourth prong does not require a showing that the position "was filled by someone outside the plaintiff's protected class").

46. *See Amro,* 232 F.3d at 797.

cluding Scroggins, a similarly situated male AEO employee. Plaintiff was not selected for a CRO position in July 1999 or in the fall and winter of 1999 because she failed to bid. Although plaintiff claimed the company should have personally notified her at home of the fall and winter openings because she was off work due to an injury, she has conceded that management is not required to notify off-duty employees and that to her knowledge no employee has even been notified of an opening at home. In short, defendant has articulated legitimate, nondiscriminatory reasons for plaintiff not being promoted and plaintiff has not shown that defendant's articulated reasons were not the real reasons, or were a pretext for its actions.

### 2. Participation in the Retraining Program

■■■ Plaintiff claims that being subjected to the retraining program constitutes disparate treatment. A plaintiff may make a prima facie showing of disparate treatment by showing that: "(1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances which give rise to an inference of discrimination." [47]

■■■ Although defendant admits that plaintiff is in a protected class, plaintiff's disparate treatment claim fails because she has not met the second and third prongs of her prima facie case. Plaintiff has not shown that participation in the retraining

program was an adverse employment action. While plaintiff stresses criticisms and rebukes from management regarding her job performance, "unsubstantiated oral reprimands" and "unnecessary derogatory comments," standing alone do not in themselves constitute adverse employment actions.[48] Moreover, no significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities or a significant change in pay or benefits occurred by virtue of plaintiff's placement in retraining. Although plaintiff's regular duties were limited during her retraining, she was still performing a portion of her regular duties, i.e., dumper and stacker duties, was never decertified from her AEO position and thus, suffered no adverse employment action.[49]

Nor has plaintiff demonstrated that her assignment to retraining, if an adverse employment action at all, occurred under circumstances which give rise to an inference of discrimination. Plaintiff averred in her Complaint that a higher percentage of female employees were subject to retraining than male AEOs. Additionally, plaintiff contended that females were held to a different standard in their evaluations than were their male counterparts, which resulted in a higher number of females receiving poor evaluations. By virtue of her failure to respond to this dispositive motion, however, plaintiff has offered no facts showing that there is a genuine issue for trial, other than the insufficient "allegations" provided in her Complaint.[50]

---

**47.** *Ammon v. Baron Auto. Group,* 270 F.Supp.2d 1293, 1310 (D.Kan.2003) (citing *Hysten v. Burlington N. & Santa Fe Ry. Co.,* 296 F.3d 1177, 1181 (10th Cir.2002)).

**48.** *Wells v. Colorado Dept. of Transp.,* 325 F.3d 1205, 1214 (10th Cir.2003).

**49.** See section B.3, *infra,* discussing the limitation on plaintiff's regular job duties in more detail.

**50.** *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.")

■ On the other hand, defendant has carried its burden showing that there are no material issues of fact regarding the third prong of plaintiff's prima facie case. Defendant has demonstrated that the retraining program required employees in defendant's Generation Services Group, including plaintiff, to be evaluated annually. Furthermore, the program applied to over 250 male and female employees at Jeffrey. At the same time plaintiff was placed in retraining, Scroggins was also assigned to retraining. The eighty percent pass rate that applied to plaintiff also applied to male employees, including Scroggins and Vetsch, both of whom, similarly to plaintiff, failed retraining tests. Additionally, Scroggins, like plaintiff, was given two chances to pass his test. Unlike plaintiff, however, Scroggins, who had been an AEO longer than plaintiff, was ultimately decertified from his job due to his lack of success in retraining. Finally, plaintiff testified that she was not aware of anyone who had failed to complete the retraining within the required time frame who was treated any differently than she was. Defendant has met its burden and, thus summary judgment is proper on this claim.

■ Even if plaintiff established a prima facie case of disparate treatment, her claim would still fail because defendant has articulated legitimate, nondiscriminatory reasons for requiring plaintiff to participate in retraining. The retraining program was initiated following a generator explosion at Jeffrey and a boiler explosion at defendant's Lawrence plant in 1996. The program required the creation of a formal retraining plan if a performance evaluation showed that an employee was deficient in certain critical skill areas. Plaintiff received such a performance exam on November 27, 1997, when she scored a number of "2s" on the skills portion of her evaluation. A score of "2" was considered marginal; consequently, defendant placed plaintiff in retraining. Plaintiff has failed to show that defendant's reason for placing her in retraining was based on anything other than defendant's safety concerns and plaintiff's deficiency in critical skill areas. Because defendant has articulated legitimate, nondiscriminatory reasons for its decision to place plaintiff in the retraining program, and plaintiff has failed to show that defendant's stated reasons were pretextual, plaintiff's disparate treatment claim premised upon her assignment to retraining fails.

### 3. Limiting Plaintiff's Regular Duties

Plaintiff claims that the temporary limitation on her duties constitutes disparate treatment. To succeed in her prima facie case, plaintiff must demonstrate that she belongs to a protected class; suffered an adverse employment action; and the adverse employment action occurred under circumstances which give rise to an inference of discrimination.[51]

■ Defendant admits that plaintiff belongs to a protected class, but because plaintiff cannot satisfy the second and third prongs of her prima facie case, her claim falls short. Plaintiff's duties were limited to work on the dumper and stacker in April 1999; but by June 1999, plaintiff became "fully certified" and could perform all of her regular duties again. Thus, plaintiff was only limited to dumper and stacker duties for a period of three months. Moreover, work on the dumper and stacker was a part of plaintiff's regular job duties as an AEO at Jeffrey. Plaintiff has not suffered a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsi-

---

**51.** *Ammon v. Baron Auto. Group,* 270 F.Supp.2d 1293, 1310 (D.Kan.2003) (citing *Hysten v. Burlington N. & Santa Fe Ry. Co.,* 296 F.3d 1177, 1181 (10th Cir.2002)).

bilities, or a decision causing a significant change in benefits. While plaintiff was temporarily reassigned, her duties were not significantly different, but rather were part of her regular duties. Nor did plaintiff lose any pay or benefits, including possible overtime pay, by virtue of her placement in retraining. Therefore, plaintiff suffered no adverse employment action.

Plaintiff has similarly provided no evidence that defendant's assigning her to work on the dumper and stacker occurred under circumstances which give rise to an inference of discrimination. She has not shown that her regular duties were limited because of her sex. Conversely, defendant has shown that Scroggins, who was assigned to retraining at Jeffrey during the same period as plaintiff, was also temporarily limited to dumper and stacker duties in 1999. Thus, plaintiff has failed to satisfy the third prong of her prima facie case.

■■■ Even if plaintiff could establish a prima facie case of disparate treatment, summary judgment must still be granted because defendant had legitimate, nondiscriminatory reasons for temporarily limiting plaintiff's job duties. Defendant did not feel comfortable allowing plaintiff to work on duties involving the critical skill areas in which she had twice received poor evaluations, particularly in light of the explosions at two of defendant's plants. Plaintiff has provided no evidence that defendant's proffered reason was not the real reason for its actions or was pretextual; thus, plaintiff's sex discrimination claim

based upon the temporary limitations in her duties fails.

### 4. Statute of Limitations

In addition to arguing that plaintiff has failed to satisfy her *McDonnell Douglas* burden, defendant argues that each of plaintiff's sex discrimination claims is barred by the statute of limitations. In a deferral state, like Kansas, a Title VII claimant must file her discrimination charge with the appropriate state or local agency, or with the EEOC, within 300 days of the alleged unlawful act.[52] When a plaintiff alleges discrete acts of discrimination, the limitations period will begin to run for each individual act on the date on which the underlying act occurred.[53] Thus, plaintiffs are "precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations period, even if sufficiently related to those acts occurring within the limitations period."[54]

Plaintiff filed her complaint with the KHRC on October 27, 1999, so the discriminatory acts which plaintiff complains of must have occurred within 300 days of this date, or approximately December 27, 1998. Plaintiff alleges three discrete acts of sex discrimination: 1) her placement in the retraining program; 2) the denial of the opportunity to be promoted to a CRO because of her placement in retraining; and 3) being limited to certain duties for a three-month period while in retraining. Defendant argues that because all of plaintiff's disparate treatment claims relate to her being in the retraining program, they are all time barred.

**52.** 42 U.S.C. § 2000e–5(e)(1); *see also Kidwell v. Bd. of County Com'rs of Shawnee County*, 978 F.Supp. 1439, 1442 n. 4 (D.Kan.1997) (noting that Kansas and the EEOC have a worksharing agreement whereby each designate the other as an agent for receiving charges).

**53.** *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir.2003).

**54.** *Id.*

 Defendant is correct that plaintiff's claim of sex discrimination due to her placement in the retraining program in the first instance occurred outside the limitations period. Plaintiff was assigned to retraining in April 1998, well before December 27, 1998, making this claim untimely. However, plaintiff's claim that she was not allowed to bid for a vacant position due to her participation in retraining was timely filed. The vacant CRO slot, of which plaintiff was barred from applying, was posted on February 24, 1999, within the 300 day limitation period. Similarly, plaintiff's regular duties were not limited to dumper and stacker duties until April 1999 and this claim too was timely filed. Thus, only one of plaintiff's alleged discrete discriminatory acts is barred by the statute of limitations.

### 5. Plaintiff's Damages

Defendant claims that even if summary judgment is denied on the merits, plaintiff should be precluded from claiming certain damages. Because the Court has already determined that summary judgment is proper on the merits, it need not reach this issue.

### III. Conclusion

Defendant has shown that no material issues of fact remain for trial and that it is entitled to judgment as a matter of law on both plaintiff's hostile work environment and disparate treatment claims. Additionally, defendant has shown that one of plaintiff's disparate treatment claims is barred by the statute of limitations. Accordingly, defendant's summary judgment motion is granted.

**IT IS THEREFORE BY THIS COURT ORDERED** that the defendant's Motion for Summary Judgment (Doc. 79) is GRANTED and plaintiff's case is dismissed with prejudice.

**IT IS SO ORDERED.**