Larry D. HYSTEN, Plaintiff–Appellant,

v.

BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY; Monte Johnson, Defendants–Appellees.

No. 01–3021.

United States Court of Appeals, Tenth Circuit.

Aug. 21, 2002.

---

Before TACHA, Chief Judge, BALDOCK, and LUCERO, Circuit Judges.

## ORDER AND JUDGMENT[*]

LUCERO, Circuit Judge.

Plaintiff Larry D. Hysten was employed as a journeyman freight-car mechanic by defendant Burlington Northern ("Burlington Northern" or. "BNSF") and its predecessor, Santa Fe Railroad, for approxi-

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

mately twenty-two years. His suit under 42 U.S.C. § 1981 consists of a claim that Burlington Northern and shop superintendent Monte Johnson engaged in retaliatory activity designed to punish him for engaging in protected opposition to discrimination. The district court granted defendants' motion for summary judgment. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I

### A

Burlington Northern's safety rules require employees to disclose information and give all facts regarding their injuries, regardless of whether the injuries occurred on- or off-duty. Although off-duty injuries are to be reported "as soon as possible," the rules require that on-duty injuries be reported immediately. (Appellant's App. at 95.) Plaintiff acknowledges that the "[r]eporting procedures were different [for] on-duty and off-duty injuries because BNSF was responsible for on-duty injuries and the employee's personal insurance was responsible for off-duty injuries." (Appellant's Br. at 2.) Unlike employees with on-duty injuries, those suffering from off-duty injuries were eligible for participation in the company's Transitional Work Program ("TWP"), a light-duty program.

On April 6, 1999, plaintiff went home at quitting time without incident and without any back pain. The next day, plaintiff missed work but did not call in sick. On April 8, 1999, plaintiff called Burlington Northern to say he was sick and going to the hospital, but he "didn't tell them the nature of what was wrong with" him. (Appellant's App. at 38.) The district court summarized further record evidence:

> Eventually, a doctor certified Plaintiff to be off work from April 7 through May 3.

From May 3 through May 17, Plaintiff returned to work on light duty under the program for employees who were injured off-duty (TWP).

On BNSF-required forms dated April 15, April 26, and May 14, 1999, Plaintiff penciled in "unknown" rather than indicating that his back injury occurred on-duty or off-duty. In conflict with those forms, however, Plaintiff completed BNSF paperwork dated April 21, 1999 where he indicated that the cause of his injury was "off-duty medical problems." (*Id.* at 95.) In response to Burlington Northern's inquiries regarding the origin of plaintiff's back injury, plaintiff was cagey, and at one point, he expressed, "No, I didn't know where I'd hurt my back at and I was kind of waiting to make sure that my back was hurt [instead of] something else wrong." (*Id.* at 96.)

Six weeks after plaintiff's injury, Burlington Northern still did not know whether plaintiff would claim to have an on-duty injury. On May 17, Johnson asked plaintiff to declare whether the injury was on- or off-duty, but plaintiff refused because, he said, he was awaiting a diagnosis. Four days later, Johnson asked again, to which plaintiff replied, "If you're going to squeeze me, I'm going to claim on the job injury." (*Id.* at 96–97.)

Plaintiff made an injury report on May 21, 1999, claiming on-duty injury. While he was filling out the form, he was notified that a formal hearing would be held on June 14 to investigate his failure to comply with the injury reporting rules. Plaintiff forgot to attend the investigatory meeting.

### B

More than a year before the injury—on February 12, 1998—plaintiff sued Burlington Northern for race discrimination under 42 U.S.C. § 1981. At all relevant times,

defendant Johnson was aware that the case had been filed.

When plaintiff forgot to attend the June 14, 1999 investigatory meeting, Johnson recommended dismissal for failing to comply with the injury reporting rules and forwarded the transcript of the hearing to a Burlington Northern official who had no knowledge of plaintiff's race discrimination lawsuit. That official concurred with Johnson. The ultimate decision to fire plaintiff was made by Richard Dennison, Johnson's superior, who probably did have knowledge of the lawsuit. Plaintiff's discharge was effective July 12, 1999. He brought this separate § 1981 suit alleging retaliatory discharge for engaging in protected opposition to discrimination.

## II

We independently review the district court's summary judgment determination, applying the following principles de novo. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999). Rule 56 of the Federal Rules of Civil Procedure states that summary judgment "must be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is made, however, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Although a metaphysical doubt as to the material facts does not suffice to preclude summary judgment, the nonmoving party should be given the benefit of all reasonable inferences in making the genuine-issue determination. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); *Simms*, 165 F.3d at 1326 ("[W]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.").

## III

Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The statute provides that all persons "shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). The language of § 1981 has been interpreted to include retaliation lawsuits. *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1258 (10th Cir. 2001).

Lack of direct evidence of retaliation is not fatal to a § 1981 claim. A retaliation case may be proven indirectly, as plaintiff attempts here, within the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Recently, we summarized that framework in *Kendrick v. Penske Transportation Services, Inc.:*

> [T]he plaintiff must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. Once the plaintiff has established a prima facie case, the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

220 F.3d 1220, 1226 (10th Cir.2000) (quotations omitted).

To establish a prima facie case of retaliation, plaintiff must show that "(1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *O'Neal,* 237 F.3d at 1252. We agree with the parties that the filing of a § 1981 discrimination complaint is a protected opposition activity, *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir. 1980); *see also O'Neal,* 237 F.3d at 1253 (holding that a filing with the Equal Employment Opportunity Commission is a protected activity), and that plaintiff's discharge constituted an adverse employment action.

The district court held that plaintiff satisfied his summary judgment burden regarding the third, causal-connection part of the prima facie framework as well. We do not express an opinion on this conclusion because, as we describe below, defendants articulated a legitimate, nondiscriminatory justification for their employment action, and plaintiff's evidence does not create a genuine issue on pretext.

Defendants articulated the following justification for plaintiff's discharge:

> Assuming [plaintiff] was injured on the job, he falsely reported to his supervisor that he was not hurt on the job; failed to immediately report the injury to the proper manager and fill out the prescribed form; and withheld or failed to give all the facts regarding his injury.

> Assuming [plaintiff] was not injured on the job, he falsely claimed an on-duty injury and failed to give all the facts regarding his injury.

(Appellant's App. at 103 (alterations in original).)[1]

A plaintiff demonstrates pretext "by showing that the employer's proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quotation omitted) (ADEA case). "Evidence of pretext may include ... prior treatment of plaintiff; the employer's policy and practice regarding minority employment ...; disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria." *Simms,* 165 F.3d at 1328. In *English v. Colorado Department of Corrections,* we stated,

> A plaintiff typically makes a showing of pretext in one of three ways:

---

1. In addition, Johnson testified that plaintiff was fired as "a result of a formal investigation concerning falsification of injury, and if memory serves me, failing to give all the facts concerning the incident." (Appellant's App. at 49.)

(1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

248 F.3d 1002, 1009 (10th Cir.2001) (quoting *Kendrick*, 220 F.3d at 1230). "A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Kendrick*, 220 F.3d at 1230. "In certain cases, a plaintiff's prima facie case and the inferences that may be drawn therefrom themselves cast sufficient doubt on a defendant's nondiscriminatory reason to satisfy his burden of showing pretext." *English*, 248 F.3d at 1009.

On appeal, plaintiff contends that there is a genuine factual issue regarding pretext, pointing specifically to "four pieces of circumstantial evidence which, in their totality, raise a genuine factual issue as to whether the defendants' proffered reasons for discharging him are pretextual, i.e., unworthy of belief." (Appellant's Br. at 21.) We examine each of these pieces of evidence in turn.

### A.  Temporal Proximity

■ Plaintiff claims that "[t]he close temporal proximity here between plaintiff's protected activity and his discharge, standing alone, is sufficient to raise a genuine factual issue as to pretext." (*Id.*) In *Hysten v. Burlington Northern & Santa Fe Railway Co.*, 296 F.3d 1177, 1184 (10th Cir.2002), we reaffirmed the principle that "unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Id.* (quotation omitted). Because more than a year passed between the filing of the § 1981 suit on February 12, 1998, and plaintiff's discharge on June 14, 1999, we cannot say that the proximity between the filing of plaintiff's complaint and his dismissal permits an inference of pretext. In anticipation of this conclusion, plaintiff asserts there is a very close temporal proximity because his written reprimand could have been in retaliation for the continued litigation of his case—e.g., he filed a brief opposing summary judgment on May 27, 1999. If that were true, then his discharge occurred less than two months after protected opposition to discrimination. We intimate no opinion regarding this contention except to say that the proximity between a specific litigation activity and the alleged retaliatory act is meaningless unless those who caused the alleged retaliatory act to occur are shown to have been aware of the specific activity. *See Hysten*, 296 F.3d at 1184. Plaintiff does not make this showing.

### B.  Prior Treatment of Plaintiff

■ As further evidence intended to show pretext, plaintiff cites two prior occasions in which he failed to report whether an injury was on- or off-duty, but that did not result in his discharge. According to plaintiff, "[t]he first time was in December of 1997 when plaintiff injured his eye. The second time was in April of 1998 when he injured his back." (Appellant's Br. at 22 (citation omitted).)

In *Watts v. City of Norman*, we held that a plaintiff wishing to show pretext with evidence that his employer treated

him differently from other workers bears the burden of showing that the employees were similarly situated. 270 F.3d 1288, 1293 (10th Cir.2001). Otherwise, we held, the comparison is not legally relevant. That burden is likewise on plaintiff when he wishes to show pretext with evidence that defendant treated plaintiff differently than it treated him in prior similar situations.

Plaintiff fails to come forward with facts showing that his December 1997 eye injury was sufficiently similar to the April 1999 back injury that eventually led to his discharge. Unlike the April 1999 injury, the December 1997 eye injury did not require a leave of absence or light-duty assignment, and plaintiff never claimed that it was an on-duty injury for which Burlington Northern would be responsible. Regarding the April 1998 back injury, plaintiff again fails to point to facts regarding the number of absences that were incurred (although at least one day was missed), whether light duty work was required, and whether he ever claimed it was an on-duty injury.

## C. Pattern of Retaliatory Conduct

■ Plaintiff correctly asserts that a pattern of conduct may preclude summary judgment regarding "defendant's motivation in demoting plaintiff and terminating his employment." *Marx v. Schnuck Mkts.*, 76 F.3d 324, 329 (10th Cir.1996). According to plaintiff, a "pattern of retaliatory conduct started with [a] formal letter of reprimand on May 7, 1998, for failing to wear proper eye protection. The pattern continued with [an] unfavorable work assignment on July 8, 1998, and the second letter of reprimand of December 30, 1998, for failing to use suitable language." (Appellant's Br. at 19–20 (citation omitted).)

According to plaintiff,

On May 6, 1998, the plaintiff returned to work from lunch and forgot to put on his glasses with side shields. Plaintiff was verbally confronted and issued a formal letter of reprimand by Gary Allison, the general equipment supervisor, for failing to wear proper eye protection. The formal letter of reprimand dated May 7, 1998, was placed in the plaintiff's personnel file. On previous occasions, when other employees or the plaintiff had forgotten to put on their protective glasses, they were issued a verbal warning.

(*Id.* at 5.) However, a May 5, 1998 letter by defendant Johnson addressed to all supervisors emphasized the importance of safety rule enforcement. The letter, which plaintiff acknowledges only in his reply brief, stated: "It is required that we hold our people accountable for Rules/Policy violations.... *WE WILL ALL BE HELD ACCOUNTABLE.*" (Appellees' App. at 177.) The comparison plaintiff seeks to draw between himself and similarly situated employees who violated safety rules "[o]n previous occasions" is therefore irrelevant and does not reasonably support an inference of retaliation.

There is also the December 1998 reprimand for failure to use suitable language. Apparently, plaintiff called a fellow employee a "midget mother f——er," which sparked a verbal confrontation. Again, plaintiff presents no evidence that this discipline was motivated by retaliatory animus.

Finally, although there is evidence that a supervisor scheduled plaintiff to an unfavorable work assignment in July 1998, there is no evidence that the supervisor knew of the discrimination lawsuit. Without knowledge, there is no inference of retaliatory conduct. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1265 (10th Cir.1998) (holding that retaliatory dis-

charge claim must be predicated on *intentional* retaliation).[2]

### D. Alleged Procedural Irregularities

Plaintiff also cites evidence in which defendant Johnson admits "that it was not his customary practice to personally take an active role in inquiring whether an employee's injury was on-duty or off-duty." (Appellant's Br. at 23.) Johnson nevertheless played a personal role in plaintiff's disciplinary proceedings.

We agree with the district court that "[e]ven though Defendant Johnson did become involved in Plaintiff's injury reporting, which was unusual, the circumstances surrounding Plaintiff's injury also were unusual. By the time Defendant Johnson became involved, Plaintiff had vacillated between an unknown cause and an off-duty cause for nearly six weeks." (Appellant's App. at 104.) Johnson's actions do not create a genuine issue of fact regarding pretext.

### IV

We have considered plaintiff's circumstantial evidence in its totality, *see Simms,* 165 F.3d at 1331, and conclude that plaintiff failed to set forth specific evidence showing that there is a genuine issue for trial regarding pretext. We therefore AFFIRM the judgment of the district court.

---

**2.** Plaintiff submitted an affidavit in which he claims the supervisor "made a racially derogatory remark when he [made the] unfavorable work assignment." (Appellant's App. at 82.) Although such evidence may be probative of *discriminatory* animus, it is not probative of *retaliatory* animus.