**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROBYNE CADDY; ANITA LOGAN,

Plaintiffs-Appellants,

v.

J.P. MORGAN CHASE BANK,

Defendant-Appellee.

No. 06-7105
(D.C. No. 05-CV-515-JHP)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **SEYMOUR**, and **ANDERSON**, Circuit Judges.

---

Plaintiffs Robyne Caddy and Anita Logan appeal pro se the district court's

grant of summary judgment in favor of defendant J.P. Morgan Chase Bank

("Chase") on their claims of race discrimination under 42 U.S.C. § 1981 in

connection with Chase's sale of real property. We exercise jurisdiction pursuant

to 28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## *Standard of Review*

We review de novo the district court's grant of summary judgment on a claim under § 1981, applying the same legal standard as the court below. *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1117-18 (10th Cir. 2001). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In applying this standard, we examine the factual record and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *Hampton*, 247 F.3d at 1118 (quotation omitted). Viewed in this light, the record reflects the following.

## *Background*

Ms. Caddy and Ms. Logan are African American sisters. Their claim under § 1981 relates to Chase's sale of real property formerly owned by Ms. Logan ("Property"). As early as 2001, Ms. Logan became delinquent on her monthly mortgage payments on the Property and she was offered a forbearance plan to bring her payments current. In 2002 Ms. Logan was again delinquent on her mortgage payments and once again she was offered one or more forbearance plans, which she did not pursue. Chase filed a foreclosure action in state court and obtained a default judgment on January 21, 2004, in the amount of $45,547,

plus interest and costs not specified in the judgment. The Property was appraised at $45,000 and auctioned at a sheriff's sale on March 18. Chase and Ms. Caddy were the only bidders at the sale. Chase opened the bidding at $59,000, and thereafter Chase and Ms. Caddy exchanged a total of nineteen bids. Ms. Caddy's last bid was $69,500. Chase was declared the highest bidder at $70,000. Chase then moved to confirm the sheriff's sale, but the confirmation hearing was delayed as a result of Ms. Logan's bankruptcy filing.

On May 31, 2004, Ms. Logan offered to pay Chase $49,500 "to satisfy the default judgment rendered against her and redeem her home." R., Doc. 22, Exhibit A. Chase agreed "to at least consider [this] short payoff offer"[1] if she satisfied two conditions: "1) Proof of availability of funds; and 2) an Order from the Bankruptcy Court approving such expenditure." *Id.*, Exhibit B. The parties dispute whether Ms. Logan satisfied the first condition, but there is no evidence that she obtained the requested order from the bankruptcy court. On June 16 Chase obtained an order from the bankruptcy court terminating the automatic stay as to the Property.

On June 28, 2004, Chase responded to a request from Ms. Logan for payoff figures on her loan. Chase calculated the amount owed through July 1, 2004, as

---

[1] Chase characterized Logan's proposal as a "short payoff" because the amount offered was less than the judgment amount at the time the offer was made. *See* Defendant's Reurged Motion for Summary Judgment, R., Doc. 33 at 6-7.

$74,219, including the principal balance due on the loan, interest, attorney fees, and "certain costs and expenses associated with that process for which lender is entitled to reimbursement from borrower pursuant to the terms of the Note and Mortgage." *Id.*, Exhibit D at 2. Ms. Logan did not accept Chase's offer to pay off her loan. An order confirming the sheriff's sale and giving Chase possession of the Property was entered on July 29. On September 3, 2004, Chase transferred the Property by special warranty deed to a third party. In April 2005 the state court found that the total judgment amount recoverable by Chase was $53,844, and ordered Chase to pay Ms. Logan the difference between the proceeds of the sheriff's sale and the judgment amount.

Ms. Caddy filed a pro se claim in the district court on December 28, 2005, alleging racial discrimination under § 1981 in connection with her attempt to purchase and redeem the Property. She asserted that Chase sold the property to a white person for less than the amount she had offered, and that the sole basis for Chase's refusal to sell her the property was that she is African American. She sought actual damages of $150,000 and punitive damages of $300,000. After Chase moved for summary judgment, counsel for plaintiffs filed an amended complaint in June 2006, adding Ms. Logan as a plaintiff.[2] The district court

---

[2] Plaintiffs were represented by counsel through the remainder of the district court proceedings, but their counsel withdrew after this appeal was initiated.

granted Chase's reurged motion for summary judgment in September 2006 and dismissed the action.

### *Section 1981 Claim*

Section 1981 "has a specific function: It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 126 S.Ct. 1246, 1249 (2006) (quoting 42 U.S.C. § 1981(a)). "'[M]ake and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' under which the plaintiff has rights." *Domino's Pizza*, 126 S. Ct. at 1249 (citation omitted). "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 1252.

A claimant under § 1981 must demonstrate: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Hampton*, 247 F.3d at 1102. When the plaintiffs' allegations of discrimination are based on inferences, rather than direct evidence–as is the case here–a court must employ the burden-shifting framework

-5-

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Hampton*, 247 F.3d at 1107. The purpose of the plaintiff's initial burden under the *McDonnell Douglas* framework is to eliminate the most common, legitimate reasons for the defendant's conduct, in order to raise an inference that its actions were based on impermissible factors. *See Perry v. Woodward*, 199 F.3d 1126, 1139-40 (10th Cir. 1999) (discussing plaintiff's initial burden in wrongful employment termination action under § 1981). In the context of a contract for the sale of real property, this court requires a plaintiff to establish the following prima facie case under § 1981:

> that the owner placed the property on the open market for sale; that plaintiff was willing and able to buy the property on the terms specified by the owner; that plaintiff so advised the owner at the time the property was available for sale; that the owner refused to so sell the property to plaintiff; and that there is no apparent reason for the refusal of the defendant to sell the property to plaintiff other than plaintiff's race.

*Houston v. Benttree, Ltd.*, 637 F.2d 739, 741 (10th Cir. 1980).[3]

---

[3] Plaintiffs did not bring a claim under 42 U.S.C. § 1982 or the Fair Housing Act (FHA), 42 U.S.C. § 3601 et seq., both of which provide more specific protection against racial discrimination in real property transactions. As noted in *Houston*, however, the elements of a prima facie case are the same under either § 1981 or § 1982. *See* 637 F.2d at 741. Further, in *Asbury v. Brougham*, 866 F.3d 1276, 1279-80 (10th Cir. 1989), we held that the elements of a prima facie case alleging housing discrimination were the same under § 1982 and under the FHA: "(1) [claimant] is a member of a racial minority; (2) she applied for and was qualified to rent an apartment [from defendant]; (3) she was denied the opportunity to rent or to inspect or negotiate for the rental of [an apartment]; and (4) the housing opportunity remained available." *See also Selden Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 785 F.2d 152, 159-60 (6th Cir. 1986) (stating

(continued...)

The precise conduct by Chase that plaintiffs contend was in violation of § 1981 has been somewhat difficult to pin down throughout these proceedings. Although they have consistently denied that their claims relate to the sheriff's sale or to other aspects of the foreclosure proceedings, *see* Aplt. Br. at 3, they have been less clear regarding what other actions by Chase were discriminatory. Ms. Caddy's original complaint alleged that she had attempted to purchase and redeem property owned by her sister, which was the subject of foreclosure proceedings, but that Chase refused her offer based upon her race and instead sold the property to a white person for a lesser amount. R., Doc. 1. In their amended complaint plaintiffs described in more detail various events within the foreclosure proceedings and added allegations regarding Ms. Logan's May 31, 2004, offer to redeem her home and Chase's June 28 letter, proposing a loan payoff figure to Ms. Logan. *Id.*, Doc. 30 at 2-3. They alleged generally that "Defendant's conduct . . . was discriminatory because of Caddy and Logan's race." *Id.* at 3. But in response to Chase's reurged summary judgment motion, plaintiffs stated more succinctly that

> Defendant discriminated against Plaintiffs, black women, because of
> their race by requiring Plaintiffs to purchase or redeem the property
> for over $70,000, an amount higher than they could afford, yet

[3](...continued)
substantively similar prima facie case for housing discrimination claim under § 1981, § 1982 and FHA); *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 551 (9th Cir. 1980) (same, under § 1982); *Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir. 1985) (same, under FHA).

> Defendant sold the property to a white person for $53,000, the lesser amount that Plaintiffs could have afforded.

*Id.*, Doc. 34 at 2-3. On appeal, they continue to contend that Chase violated § 1981 by offering to sell the Property to them for over $70,000, but subsequently selling it to a white person for a lesser amount. *See* Aplt. Br. at 7-8, 9.

### *Ms. Caddy's Claim*

Ms. Caddy failed to demonstrate a prima facie case of discrimination under § 1981 because she did not show that she was willing and able to buy the Property on terms specified by Chase at any time. *See Houston*, 637 F.2d at 741. Her bids at the sheriff's sale were not offers to purchase the Property from Chase. She bid *against* Chase to purchase the Property, which at that time was still owned by her sister, Ms. Logan. In any event, she expressly concedes that her claim does not relate to any of the procedures in the foreclosure action, which would include the conduct and result of the sheriff's sale. Although she asserts on appeal that Chase offered to sell the Property to *both* her and Ms. Logan for over $74,000, *see* Aplt. Br. at 4, 6, 7, 9, there is no evidence in the record to support her contention. Chase's June 28, 2004, offer was made solely to Ms. Logan as the borrower, to pay off her loan. Thus, there is no dispute as to a material fact regarding Ms. Caddy's failure to purchase or attempt to purchase the Property from Chase. "[A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and

enforce.'" *Domino's Pizza*, 126 S.Ct. at 1252. *See also Hampton*, 247 F.3d at 1118 (affirming summary judgment where claimant did not make or attempt to make a purchase from defendant). Because Ms. Caddy has not shown any impaired contractual relationship between herself and Chase, we hold that the district court correctly dismissed her claim as a matter of law.

### Ms. Logan's Claim

Ms. Logan also has not established a prima facie case of discrimination under § 1981. It was her burden to show that the Property was offered for sale by Chase, that she advised Chase she was willing and able to buy it on the terms specified by Chase, and that Chase refused to sell it to her on those terms. *See Houston*, 637 F.2d at 741. The only evidence in the record concerning the sale of the Property by Chase is a special warranty deed transferring the property to a third party. That deed does not indicate the terms of the sale. Moreover, Ms. Logan does not even allege, much less provide any evidence, that she attempted to purchase the Property on the terms that it was offered for sale by Chase, but that she was refused.

She claims instead that the sale of the Property occurred under circumstances giving rise to an inference of discrimination because Chase offered to sell it to her on different terms than it ultimately accepted from a white purchaser. Her claim, then, is similar to a claim of disparate treatment under the Fair Housing Act (FHA), 42 U.S.C. § 3604(b), which makes unlawful

discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race." *See Honce v. Vigil*, 1 F.3d 1085, 1088-89 (10th Cir. 1993) (affirming judgment as a matter of law on claim under FHA where plaintiff failed to prove prima facie case of disparate treatment by showing landlord refused to rent to or to provide women same rental services); s*ee also Clark v. Universal Builders, Inc.*, 706 F.2d 204, 207 (7th Cir. 1983) (under § 1982, "a black prospective buyer of a dwelling demonstrates discriminatory conduct if he proves that an owner utilizes different pricing policies with respect to blacks and whites similarly situated" (quotation omitted)). Thus, Ms. Logan purports to satisfy her prima facie burden to raise an inference of Chase's intent to discriminate by demonstrating that it offered her less-favorable terms to purchase the Property than it offered to a white buyer.[4]

In support of this claim she must show that this comparison is legally relevant–that she and other potential buyers were "similarly situated." *See Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1182 (10th Cir. 2002) (applying "similarly situated" test to plaintiff's prima facie burden to show disparate treatment in employment suspension context); *see also Clark*, 706 F.2d at 207 (upholding district court's determination under § 1982 that black and white

---

[4]     We note that Ms. Logan does not claim or present evidence of discrimination by Chase in offering her unfavorable loan payoff terms vis-a-vis other mortgagors.  Her claim is squarely premised on the amount at which Chase sold the Property to the third party, who she alleges is white.

buyers were not similarly situated because homes they purchased on different terms were not comparable); *Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.*, 342 F.3d 871, 883 (8th Cir. 2003) (holding in claim under FHA of racial discrimination in awarding tax credits and state funding that funding awarded to non-member of protected class was not similar to award sought by claimant, and therefore claimant and non-member of protected class were not similarly situated).

As evidence of Chase's offer to sell the Property to her, she relies on its June 28, 2004, letter proposing to allow her to pay off her mortgage loan on the Property for over $74,000. Here Ms. Logan mixes proverbial apples and oranges. Chase's June 28 letter proposed a payoff of her mortgage loan in light of Chase's judgment in the foreclosure action, which included the entire outstanding principal on the loan, interest, attorney fees and certain costs. It was not an offer to sell her the Property. In fact, at the time Chase made the offer, she still owned the Property, which was not conveyed to Chase until a month later. In order to demonstrate an inference of Chase's intent to discriminate, she compares the amount of Chase's June 28 loan payoff proposal to her with Chase's subsequent sale of the Property to a third party, who she alleges to be white, for an amount she alleges to be less than $55,000. But there is no evidence that the third party purchaser was, like her, subject to a foreclosure judgment on the Property. Because Ms. Logan and the subsequent purchaser of the Property from Chase

-11-

were not similarly situated, her comparison is not legally relevant and cannot raise an inference of impermissible discrimination. *See Hysten*, 296 F.3d at 1182.

Moreover, even if it were legally relevant, there is simply no evidence to complete the comparison in order to support an inference of discriminatory intent. Although she asserts that the buyer of the Property was white and paid Chase less than $55,000, she offered no evidence to support either of those contentions. She presented no evidence of the sale price in Chase's transfer of the Property to the third party.[5] Nor is there any evidence of the buyer's race. Ms. Logan asserts that Chase does not dispute these allegations and therefore the district court should have denied summary judgment. She misunderstands her burden as the plaintiff in this action. "[W]here the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quotations omitted). Thus, it was her burden to come forward with evidence in support of her factual allegations and she failed to do so.

---

[5] Ms. Logan appears to argue on appeal that the amount of the sale price from Chase to the third party is evident from the documentary stamp of $78.00 that appears on the special warranty deed. She did not make this argument below and we do not generally entertain arguments not presented to the district court. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992). Moreover, even on appeal Ms. Logan fails to explain the claimed significance of the stamp.

We hold that the district court's grant of summary judgment in favor of Chase was correct, as neither Ms. Caddy nor Ms. Logan has demonstrated material facts in dispute, and their claims under § 1981 fail as a matter of law.

The judgment of the district court is AFFIRMED.

Entered for the Court


Stephen H. Anderson
Circuit Judge